Lynda GAINES et al., Plaintiffs,

v.

Winston D. ANDERSON et al., Defendants.

Civ. A. No. 76–435–M.

United States District Court,
D. Massachusetts.

Sept. 1, 1976.

Daniel D. Levenson, William J. Eisen, Lourie & Cutler; and John Reinstein, Civil Liberties Union of Mass., Boston, Mass., for plaintiffs.

Alfred J. Mainini, Mainini & Mainini, Framingham, Mass., for defendants.

Before COFFIN, Chief Circuit Judge, and MURRAY and SKINNER, District Judges.

## OPINION

FRANK J. MURRAY, District Judge.

The plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to challenge the constitutionality of the Massachusetts statute, and the guidelines of the school committee of the town of Framingham adopted to implement it, which requires the observance of a period of silence at the opening of the school day in the public schools. The statute reads:

At the commencement of the first class of each day in all grades in all public schools the teacher in charge of the room in which each such class is held shall announce that a period of silence not to exceed one minute in duration shall be observed for meditation or prayer, and during any such period silence shall be maintained and no activities engaged in.

St.1966, ch. 130, as amended by St.1973, ch. 621; Mass.Gen.Laws ch. 71, § 1A.

On January 12, 1976 the school committee adopted a resolution ". . . that the School Committee comply with the law, Chapter 71, Section 1A of the M.G.L. until such time as the courts rule the Chapter in violation of the Constitution". On January 27, the school committee adopted guidelines to carry out the statutory provisions. The guidelines have been observed since February 2, the day this action was brought. Plaintiffs seek declaratory and injunctive relief to vindicate alleged violations of their rights under the United States Constitution. A three-judge court was convened to hear and determine the claim for injunctive relief. 28 U.S.C. § 2284.

## I

Plaintiffs are twelve students who attend the public schools of the town of Framingham, and the parents of these students.[1] Defendants are the members of the school committee and the superintendent of schools of Framingham. In their complaint plaintiffs allege that the statute as amended and the guidelines violate their rights under the First[2] and Fourteenth[3] Amendments in the following respects: (1) they establish a religious exercise in the public schools in violation of the Establishment Clause of the First Amendment, (2) they mandate a particular format for the reli-

---

1. There is presently pending the plaintiffs' motion to amend the complaint by adding a paragraph alleging that the parents of the student-plaintiffs are also plaintiffs. The motion is allowed.

2. The strictures of the First Amendment are made applicable to the states by the Fourteenth Amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940);

*Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

3. The provision of the Fourteenth Amendment relied upon by plaintiffs is that "No State shall . . . deprive any person of . . . liberty, . . . without due process of law; . . . .".

gious exercise in violation of the Free Exercise Clause of the First Amendment, and (3) they interfere with the parents' due process rights exclusively to supervise the religious upbringing of their children in violation of the Fourteenth Amendment.

The statute is clear in its requirements. It provides that at the opening of the school day in all grades in the public schools a minute of silence shall be maintained during which no overt activities shall take place. The teacher in charge of the schoolroom is required to announce the minute of silence to be observed for meditation or prayer. It is clearly contemplated that this exercise shall be observed in a public building under general supervision of a public school teacher. Under the guidelines teachers are to remind students not observing silence of their obligation to obey the school rules and regulations, and to refer persistent violators to the school principal. If the principal fails to achieve the cooperation of the violator, the principal then is required to follow the established procedures for dealing with breaches of school regulations.[4] Because we conclude that the statute and the guidelines do not advance or inhibit religion, or coerce any student into participating in any activity which infringes his liberty of conscience or interferes with the free exercise of his religion, we do not agree that they violate plaintiffs' rights under the Constitution.

II

█ The First Amendment commands in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof". The Supreme Court has stated the test for measuring the compliance of a challenged statute with the Establishment Clause of the First Amendment in the following language:

. . . what are the purpose and primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.

*Abington School Dist. v. Schempp*, 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844

4. The complete guidelines read:

GUIDELINES FOR
IMPLEMENTATION OF
CHAPTER 71, SECTION 1A
OF THE
MASSACHUSETTS GENERAL LAWS

1) The following announcement shall be made each school day morning in each school at the commencement of the first class (it being understood that in the high schools the home room period would be considered the first regular period of the day) by the teacher in charge of the room. The announcement shall be made during the period of time when school attendance is taken.
"A one minute period of silence for the purpose of meditation or prayer shall now be observed. During this period silence shall be maintained and no activities engaged in."
At the end of the one minute period, the following shall be announced by the teacher.
"Thank you."

2) If teachers are asked questions concerning this period for meditation or prayer the following should be the response.
"We are doing this in compliance with State Law. Any other questions you have should be discussed with your parents or with someone in your home."

3) Students not adhering to this regulation shall be reminded by the teacher of their responsibility to obey school rules and regulations. This should be done without detailed explanations or corrective action by the teacher.

4) If a student persists in violating this regulation, the teacher shall refer the student to the principal for corrective action.

5) The principal shall attempt to gain the cooperation of the student in obeying this regulation. If reasonable action on the part of the principal fails to achieve compliance with the regulation, the principal will continue to follow normal established procedures for dealing with breaches of school regulations. These will include a conference or conferences with parents or guardian of the student and, in those situations judged necessary by the principal, suspension of the student from school. The student and his parents or guardian shall be advised of their right to appeal the decision of the principal to the Superintendent of Schools or the School Committee.

(1963). In *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), the Court referred to a three-part test of any law challenged on establishment grounds: (1) the law must reflect a clearly secular purpose, (2) it must have a primary effect that neither advances nor inhibits religion, and (3) it must avoid excessive government entanglement with religion.

■■■ The application of any of these criteria to state action challenged as violative of the Establishment Clause cannot be scientifically precise, *see Tilton v. Richardson,* 403 U.S. 672, 678, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971), for the line which separates the secular from the sectarian is an elusive one. Application of these criteria requires careful consideration of the values embodied in the First Amendment as revealed by its history and the Supreme Court cases which have explicated it. It is enough to note here that what is at stake in the First Amendment religion clauses is the policy of separating Church and State to the extent practicable in a nation whose institutions reflect that our heritage is religious and whose people in large measure adhere to a variety of religious beliefs and creeds. The Court's opinions generally have recognized that the underlying policy of the First Amendment's prohibitions is the prevention of such dependence of religion on government and such interference by government with religion "that, as history teaches us, is apt to lead to strife and frequently strain a political system to the breaking point". *Walz v. Tax Commission,* 397 U.S. 664, 694, 90 S.Ct. 1409, 1424, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring); *see Everson v. Board of Education,* 330 U.S. 1, 8–11, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Engel v. Vitale,* 370 U.S. 421, 425–27, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Abington School Dist. v. Schempp, supra,* 374 U.S. at 307, 83 S.Ct. 1560 (Goldberg, J., concurring).

In applying the criteria to the statute challenged in this case, we consider and appraise the history of the 1966 enactment, the 1973 amendment,[5] the statutory language employed, and the involvement of the state under the statute in the public school setting.

## III

The plaintiffs infer an unconstitutional purpose from the timing of the 1966 enactment and the meaning of the word "meditation". They argue that the enactment took place in the "aftermath of the invalidation" of Bible reading and prayer in the Massachusetts public schools by the Supreme Judicial Court in *Attorney General v. School Committee of North Brookfield,* 347 Mass. 775, 199 N.E.2d 553 (1964), to fill the void caused by the invalidation. They contend this history leads to the conclusion that it was not the intent of the legislature to further secular ends. We note that the statute was enacted in 1966 after the decisions in *Schempp* in 1963 and *North Brookfield* in 1964, but we think plaintiffs' arguments do not withstand close scrutiny.

■■ The timing of the 1966 enactment does not necessarily support an inference that the Massachusetts Legislature was motivated by an unconstitutional purpose to promote religion. The enactment of this legislation in the aftermath of *Schempp* and *North Brookfield* is completely consistent with a legislative purpose to promote secular purposes in a manner that is constitutionally neutral as to religion. We doubt that timing alone could ever be sufficient to establish an unconstitutional purpose to advance religion. *Compare Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). Other materials invariably must be considered. *Cf. McGowan v. Maryland,* 366 U.S. 420, 453, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Here, the legislative history, the statutory language, and its likely operation and effect, all suggest that this legislation was designed to serve secular objectives without unconstitutionally advancing religion. Although the legislative history is sparse, the available materials establish that the original bill was entitled "An Act providing for

5. The 1973 amendment added the words "or prayer" to the statute.

a moment of silent prayer at the beginning of each day in the public schools of the Commonwealth and the recitation of the pledge of allegiance". The pertinent section of the bill provided that "The school day in all the public schools of the [C]ommonwealth shall commence in silence for one moment so that any pupil who so desires may offer a prayer in silence". Upon referral of the bill to the Legislative Committee on Education the word "prayer" was stricken from the title and body of the bill and the word "meditation" was substituted. Subsequently, the Massachusetts Senate changed the bill in certain respects but retained the Committee language of "meditation".

■ We think that in striking the word "prayer" out of the bill and substituting the word "meditation" the Massachusetts Legislature demonstrated awareness of the distinction between these two words and an intention to further secular purposes without infringing the values protected by the Establishment Clause. A state statute which mandates a moment of silence in a public school setting is not *per se* an invalid exercise of legislative power. All that the statute requires students to do is be silent. Silence during the school day may frequently be necessary if schools are to attain their educative goals, and may serve legitimate secular purposes in aid of the educative function. A quiet moment at the beginning of the day would tend to " 'still the tumult of the playground and start a day of study' ". *Abington School Dist. v. Schempp, supra,* 374 U.S. at 281, n. 57, 83 S.Ct. at 1602 (quoting the Washington Post, June 28, 1962, § A, at 22, col. 2). The legislature could reasonably believe that students tend to learn greater self-disci-

pline and respect for the authority of the teacher from a required moment of silence. These are legitimate secular ends, and a purpose to advance them is constitutionally permissible.

■ The word "meditation" did not infuse the statute with the unconstitutional purpose or effect of advancing or inhibiting religion. Meditation—the act of meditating—is not necessarily a religious exercise. Used in its ordinary sense "meditation" connotes serious reflection or contemplation on a subject which may be religious, irreligious or nonreligious.[6] Thus, the words of the 1966 statute are capable of a reasonable construction by which the constitutional difficulties raised by plaintiffs may be avoided. *See, e. g., Curtis v. Loether,* 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). We think it is entirely consistent with the secular goals of public schools for the state to encourage students to turn their minds silently toward serious thoughts and values. As Mr. Justice Brennan wrote:

It has not been shown that readings from the speeches and messages of great Americans, for example, or from the documents of our heritage of liberty, daily recitation of the Pledge of Allegiance, or *even the observance of a moment of reverent silence at the opening of class,* may not adequately serve the solely secular purposes of the devotional activities without jeopardizing either the religious liberties of any members of the community or the proper degree of separation between the spheres of religion and government. (Emphasis added.)

*Abington School Dist. v. Schempp, supra* 374 U.S. at 281, 83 S.Ct. at 1602 (Brennan, J., concurring).[7] In our view the prescribed

6. *See, e. g.,* the definition of "meditation" in Webster's Third New International Dictionary, p. 1403 (Unabridged 1966):

1: a spoken or written discourse treated in a contemplative manner and intended to express its author's reflection or esp. when religious to guide others in contemplation 2: a private devotion or spiritual exercise consisting in deep continued reflection on a religious theme '. . . 3: the act of meditating:

steady or close consecutive reflection: continued application of the mind . . . .
Plaintiffs have submitted the affidavits of Rabbi Herman J. Blumberg and Rev. Charles A. Gaines, a Unitarian minister, who state that the terms "prayer" and "meditation" are interchangeable in their faiths. This understanding, however, is not binding on either the state legislature or this court.

7. *See also Opinion of the Justices,* 113 N.H. 297, 307 A.2d 558 (1973); *Opinion of the Jus-*

exercise in the 1966 statute was not a state endorsement of religion or interference with liberty of conscience; it did not constitute a religious exercise to achieve secular ends, and, therefore, did not have an unconstitutional effect. We find that the statute met the neutrality requirements of the Establishment Clause.

## IV

We turn next to the question whether the statute continued to withstand the strictures of the Establishment Clause after the words "or prayer" were added to it by the 1973 amendment. Unlike the word "meditation", the word "prayer" in its usual and ordinary sense has a specifically religious meaning.[8] It is settled that the state cannot utilize its power or prestige or influence to advance or encourage religion, *see, e. g., Epperson v. Arkansas, supra* 393 U.S. at 103–04, 89 S.Ct. 266; *Torcaso v. Watkins,* 367 U.S. 488, 495, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), and if the amendment here has the purpose or primary effect of encouraging the religious activity of prayer the statute would be rendered unconstitutional. *Abington School Dist. v. Schempp, supra; Engel v. Vitale, supra.* But in appraising the amended statute we are mindful that government's attitude toward religion must be one of "wholesome 'neutrality' ", *Abington School Dist. v. Schempp, supra,* 374 U.S. at 222, 83 S.Ct. 1560. The requirements of the First Amendment do not implicate hostility to religion or indifference toward religious groups; they do not import a preference for those who believe in no religion, or demand primary devotion to the secular.

The 1973 amendment is framed in the disjunctive, and the statute as amended permits meditation or prayer without mandating the one or the other. Thus, the effect of the amended statute is to accommodate students who desire to use the minute of silence for prayer or religious meditation, and also other students who prefer to reflect upon secular matters. This understanding of the operation and effect of the amended statute is reinforced by the legislative history of the amendment and the guidelines adopted by the Framingham school committee.

The bill proposing the amendment originally read:

> At the commencement of the first class of each day in all grades in all public schools the teacher in charge of the room in which each such class is held shall announce that a period of silence not to exceed one minute in duration shall be observed for meditation *and* prayer, and during any such period silence shall be maintained and no activities engaged in. (Emphasis added.)

House Bill 4890 of 1973. The sponsor of the bill later amended it on the floor by striking out the word "and" and substituting the word "or". This change was a significant one, even if not dispositive, for it indicates a legislative sensitivity to the First Amendment's mandate to take a neutral position that neither encourages nor discourages prayer. Further, the program instituted in the Framingham schools follows the statute

---

*tices,* 108 N.H. 97, 228 A.2d 161 (1967); *Reed v. Van Hoven,* 237 F.Supp. 48, 55–56 (W.D.Mich. 1965); Opinion of the Massachusetts Attorney General, Apr. 4, 1966, p. 299; Opinion of the Massachusetts Attorney General, Aug. 20, 1963, p. 84; Choper, Religion in Public Schools: A Proposed Constitutional Standard, 47 Minn. L.Rev. 329, 370–71 (1963); P. Freund, *Religion and The Public Schools, The Legal Issue* (1965).

**8.** *See, e. g.,* the definition of "prayer" in Webster's Third New International Dictionary, p. 1782 (Unabridged 1966):

> . . . 1a: a solemn and humble approach to Divinity in word or thought usu. involving beseeching, petition, confession, praise, or thanksgiving . . . b: an earnest request to someone for something . . . c prayers *pl*: earnest good wishes . . . 2: the act or practice of praying: the addressing of words or thought to Divinity in petition, confession, praise, or thanksgiving . . . 3: a religious service consisting chiefly of prayers . . . 4: a set form of words used in praying: a formula of supplication, confession, praise, or thanksgiving addressed to God or an object of worship . . . 5: something prayed for: a subject of prayer . . . 6: a slight or minimal chance (as to succeed or survive) . . . . .

precisely. There the only command to the students is the requirement that they be silent for one minute for the purpose of meditation or prayer; there is no command that they meditate or pray.[9] The teachers are directed to dispose of questions raised by students concerning the period of mandated silence with this specific response:

> We are doing this in compliance with State Law. Any other questions you have should be discussed with your parents or with someone in your home.

We think that the lack of any mandatory direction to students to meditate or pray clearly indicates a legislative purpose to maintain neutrality, and that the defendants understand this to be the statutory purpose and effect. The fact that the Framingham program provides an opportunity for prayer for those students who desire to pray during the period of silence does not render the program unconstitutional. *See McGowan v. Maryland, supra; Everson v. Board of Education, supra.*

▮ The Supreme Court has held that it is no part of the business of the state to direct the recitation of officially prescribed prayers in the classrooms of public schools, *Engel v. Vitale, supra,* or to require the reading of verses from the Bible and public recitation of the Lord's Prayer at the opening of the school day by pupils in unison. *Abington School Dist. v. Schempp, supra.* In those cases the Court found the prayer exercises to be religious, and violative of the First Amendment even if individual pupils could be excused from attending or participating in the exercises. But the statutory schemes in *Engel* and *Schempp* had features not present in the statute and guidelines before us, which persuade us that neither *Engel* nor *Schempp* necessarily controls this case. We think that the absence of any mandate by the statute or the teacher to the students to participate in prayer is not an attempt to save an unconstitutional program of school

prayer, *see Engel v. Vitale, supra; Abington School Dist. v. Schempp, supra,* but, as we have seen, shows a legislative purpose to maintain neutrality. The Court in *Walz v. Tax Commission, supra,* has pointed out the guidelines that mark the channel limits of constitutional neutrality:

> The course of constitutional neutrality in this area cannot be an absolutely straight line; rigidity could well defeat the basic purpose of these provisions, which is to insure that no religion be sponsored or favored, none commanded, and none inhibited. The general principle deducible from the First Amendment and all that has been said by the Court is this: that we will not tolerate either governmentally established religion or governmental interference with religion. Short of those expressly proscribed governmental acts there is room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.
>
> Each value judgment under the Religion Clauses must therefore turn on whether particular acts in question are intended to establish or interfere with religious beliefs and practices or have the effect of doing so. Adherence to the policy of neutrality that derives from an accommodation of the Establishment and Free Exercise Clauses has prevented the kind of involvement that would tip the balance toward government control of churches or governmental restraint on religious practice.

397 U.S. at 669–70, 90 S.Ct. at 1411–12. The line that separates the permissible from the impermissible in this area is elusive. But the statute and guidelines do not create any of the dangers which the First Amendment is designed to prevent. Instead, they serve legitimate secular purposes without departing from the neutrality required by

---

**9.** The plaintiffs appeared to concede this at the oral argument. A member of the panel asked counsel for the plaintiffs whether the statute would be violated in the following circumstances: after the announcement and the minute of silence, a student tells his teacher that he did not meditate or pray during the period. Counsel stated he thought such circumstances would not violate the statute.

the First Amendment. We are therefore persuaded that the Establishment Clause does not prohibit the practices permitted by the statute and guidelines here.

## V

The plaintiffs have not demonstrated that the statute mandates a religious exercise in violation of the Free Exercise Clause of the First Amendment. The plaintiffs argue that the requirement of a moment of silence infringes "their right to give to their children a religious upbringing consistent with their beliefs, not modified by prayer or meditation required by the State"; that the "sterile" atmosphere of the classroom and the restriction of the period for meditation or prayer to one minute demean their concept of prayer; and that the exposure of the plaintiffs to this atmosphere violates their rights under the Free Exercise Clause. Before addressing this argument we point out what we think is clearly evident: that the free exercise rights of the parents are not at stake since they do not attend school and are not exposed to the minute of silence. *Compare Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Although it is not entirely clear whether the plaintiffs' argument concerns the rights of the parents, students, or both, we will assume here that the argument refers to the rights of the students.

The Establishment Clause and the Free Exercise Clause must be read together in light of the underlying purpose they are designed to serve, but the Free Exercise Clause undoubtedly has an independent reach. *Gillette v. United States,* 401 U.S. 437, 461, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). In *Abington School Dist. v. Schempp, supra,* the distinction between the Free Exercise Clause and the Establishment Clause was stated as follows:

> The Free Exercise Clause . . . withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. Hence it is

necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion. The distinction between the two clauses is apparent—a violation of the Free Exercise Clause is predicated on coercion while the Establishment Clause violation need not be so attended.

374 U.S. at 222–23, 83 S.Ct. at 1572. There is no showing in this case that any plaintiff was coerced into participating in practices which violate his religious beliefs concerning prayer. *Compare Wisconsin v. Yoder, supra.* Moreover, as we have seen, the statute and guidelines do not compel participation by any student in a religious activity which violates his liberty of conscience. *Compare State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Unlike the scheme in *Schempp,* the statute and guidelines here do not operate to confront any student with the cruel dilemma of either participating in a repugnant religious exercise or requesting to be excused therefrom. *See Abington School Dist. v. Schempp, supra,* 374 U.S. at 289–293, 83 S.Ct. 1560 (Brennan, J., concurring). If a student's beliefs preclude prayer in the setting of a minute of silence in a schoolroom, he may turn his mind silently toward a secular topic, or simply remain silent, without violating the statute or guidelines or facing the scorn or reproach of his classmates. No rights of plaintiffs under the Free Exercise Clause are violated where the statute and guidelines accommodate those students who desire to pray silently during the minute of silence and whose religious backgrounds permit prayer under those circumstances. *See Gillette v. United States, supra; Braunfield v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). Thus, the neutrality of the statute and guidelines, which we have found to meet the requirements of the Establishment Clause, satisfies the requirements of the Free Exercise Clause.

## VI

Finally, the parent-plaintiffs contend that the statute and guidelines violate

their rights under the Due Process Clause of the Fourteenth Amendment exclusively to direct the religious bringing up of their children. We recognize the force of this argument as a general proposition. *See Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).[10] As the Court stated in *Wisconsin v. Yoder, supra:*

> The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.

406 U.S. at 232, 92 S.Ct. at 1541.

However, the arguments of the parents reflect exactly the free exercise argument advanced on behalf of the students. Compulsion by law of the acceptance of any creed or religious belief or the participation in any form of religious exercise is forbidden by the First Amendment. But the statute and guidelines do not compel the student-plaintiffs to affirm a religious belief repugnant to their parents; they do not compel student assent or even resignation to a religious practice repugnant to their parents. The parents remain free without interference from the statute and guidelines to guide and direct the religious education of their children. They also remain free to instruct their children that, while other students who desire may pray silently, they should not engage in prayer during the moment of silence but merely remain silent as directed by the teacher. Such parental guidance and instructions are not inhibited by the statute and guidelines. Because the statute and the guidelines compel no participation in any religious exercise by the students, the state infringes no parental liberty protected by the Due Process Clause.

We have closely scrutinized the statute and guidelines in our analysis of plaintiffs' claims because First Amendment liberties are at issue. In our view plaintiffs have failed to show the absence of a neutral, secular purpose for the opening moment of silence in the Framingham public schools. The statute and guidelines do not have a primary effect of favoring or sponsoring religion. They do not involve the state in religious exercises or directly in the realm of religion. They do not fall within the proscriptions of the First Amendment.

### ORDER

This case came on to be heard before the three-judge court on the merits of the application for injunctive and declaratory relief, and was argued by counsel, and thereupon, upon consideration thereof, and in accordance with the opinion filed herewith, it is hereby

ORDERED: The complaint be and hereby is dismissed.

---

**10.** The dicta in *Pierce* concerning the rights of the parents to direct the upbringing and education of their children, 268 U.S. at 534–35, 45 S.Ct. 571, apparently have been transformed by time into the holding. *See Wisconsin v. Yoder,* 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972): "However read, the Court's holding in *Pierce* stands as a charter of the rights of parents to direct the religious upbringing of their children".