# OPINIONS OF THE JUSTICES.

OPINIONS OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law,* Establishment of religion. *Religion. Education.*
Prayer in schools.

A proposed statute providing that students in all public school classrooms
shall observe a daily period of prayer or meditation under the leader-
ship of a student volunteer, and providing that students not wishing to
participate may be excused from the exercise, would, if enacted, vio-
late the establishment clause of the First Amendment to the United
States Constitution. [1203-1207] NOLAN & LYNCH, JJ., dissenting.

On September 30, 1982, the Justices submitted the fol-
lowing answer to questions propounded to them by the
House of Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit their response to the questions set forth
in an order adopted by the House of Representatives on
August 3, 1982, and transmitted to us on August 5, 1982.

The order recites that House No. 1454, a bill pending be-
fore the General Court, provides for a period of voluntary
prayer or meditation in public schools, and that grave doubt
exists as to its constitutionality if enacted into law. A copy
of the bill was transmitted with the order. The bill, entitled
"An Act requiring a period for voluntary prayer or medita-
tion in public schools," would amend G. L. c. 71, § 1A, by
striking out the present § 1A and inserting in its place the
following sections:

"*Section 1A.* At the commencement of the first class of
each day in all grades in all public schools the teacher in
charge of the room in which each class is held shall announce
that a period of voluntary prayer or meditation may be of-

fered by a student volunteer, not to exceed one minute in duration.

"*Section B.* Such prayer shall not establish a religion in Public Schools, just as the prayer by the Chaplains of the Senate and House of Representatives, and the Crier of the Supreme Court, does not establish [a] religion in our government."

The order presents two questions to us:

> "1. Would the enactment of said bill which allows voluntary permissible prayer and meditation in the public schools of the commonwealth be constitutional under Article II of Part I of the Constitution of the Commonwealth?
>
> "2. Would the enactment of said bill which allows voluntary permissible prayer and meditation in the public schools of the commonwealth be constitutional under the First and Fourteenth Amendment of the United States Constitution?"[1]

We treat the questions presented by the House of Representatives in reverse order because if the proposed statute would violate the First Amendment of the United States Constitution, as applicable to the States through the Fourteenth Amendment, *Cantwell* v. *Connecticut,* 310 U.S. 296, 303 (1940), its constitutionality under the Massachusetts Constitution is irrelevant. See, e.g., *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 644 (1981). We note also that "the criteria which have been established by the United States Supreme Court for judging claims arising under the First Amendment . . . are equally appropriate to claims brought under cognate provisions of the Massachusetts Constitution." *Colo* v. *Treasurer & Receiver Gen.,* 378 Mass. 550, 558 (1979).

---

[1] Responding to our invitation for briefs from interested persons, the Board of Education has argued that the questions should be answered in the negative; the Committee to Restore Voluntary Prayer in School has argued that the questions should be answered in the affirmative.

Section 1A of House No. 1454 is almost indistinguishable in substance from the statute this court held unconstitutional in *Kent* v. *Commissioner of Educ.*, 380 Mass. 235 (1980). In *Kent,* this court was called upon to review the constitutionality of a version of G. L. c. 71, § 1A, as appearing in St. 1979, c. 692. That version read as follows: "At the commencement of the first class of each day in all grades in all public schools the teacher in charge of the room in which each such class is held shall announce that a period of prayer may be offered by a student volunteer, and during any such period an excusal provision will be allowed for those students who do not wish to participate." The plaintiffs in *Kent,* public school children and their parents, challenged the statute as violative of the First Amendment to the United States Constitution which states in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." The court held the law to be unconstitutional because the statute was religious in character and had a sectarian purpose and effect. *Kent, supra* at 242-245. We concluded that enforcement by the Commonwealth of the legislation in regard to school prayer would violate the principle of separation of church and State as embodied in the First Amendment.[2]

---

[2] We are not persuaded by the argument of amicus curiae, the Committee to Restore Voluntary Prayer in School, that the recent decision of *Widmar* v. *Vincent,* 454 U.S. 263 (1981), limited the holding in *School Dist. of Abington Township* v. *Schempp,* 374 U.S. 203 (1963), on which we relied in *Kent* v. *Commissioner of Educ.,* 380 Mass. 235, 240-241 (1980). The facts in *Widmar* are wholly dissimilar. In *Widmar,* university students who were members of a registered religious group challenged a regulation adopted by the University of Missouri that prohibited the use of University grounds or buildings for purposes of religious worship or teaching. *Widmar, supra* at 266. The University routinely provided its facilities for meetings of registered organizations. *Id.* at 265. The *Widmar* Court framed the issue before it as follows: "In order to justify discriminatory exclusion from a public forum based on the religious content of a group's intended speech, the University must therefore satisfy the standard of review appropriate to content-based exclusions. It must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* at 269-270. The Court went on to note that "it is on the bases of speech and association rights that we decide the

The only discernible distinction between the statute in *Kent* (St. 1979, c. 692) and House No. 1454 is that House No. 1454 does not exclusively contemplate that the student volunteer will offer a prayer. The student may offer a period of meditation. We think that the addition of the words "or meditation" is of no constitutional significance in this context.[3] House No. 1454 contemplates that, at least in some instances, viz., at the student volunteer's discretion, prayers will be orally recited. The proposed statute, on its face, demonstrates an intent to return prayer to the public schools. The United States Supreme Court, however, has consistently held that the establishment clause withdraws all legislative power respecting religious belief or the expression thereof. *School Dist. of Abington Township* v. *Schempp*, 374 U.S.

---

case" and that the Court need not reach "the questions that would arise if State accommodation of free exercise and free speech rights should, in a particular case, conflict with the prohibitions of the Establishment Clause." *Id.* at 273 n.13.

Thus, the Court never cited its decision in *Schempp*, as there was no need to distinguish *Schempp* from *Widmar*. The Court concluded that the basis for its decision was "narrow": "Having created a forum generally open to student groups, the University seeks to enforce a content-based exclusion of religious speech. Its exclusionary policy violates the fundamental principle that a state regulation of speech should be content-neutral, and the University is unable to justify this violation under applicable constitutional standards." *Id.* at 277.

In the *Schempp* case, by contrast, the Court relied only on the establishment clause claim in striking down statutes that provided for prayers and other religious exercises in public schools. *Schempp, supra* at 205. The *Schempp* case is also readily distinguishable, on its facts, from *Widmar.* Compare *Schempp, supra* at 223, with *Widmar, supra* at 274 n.14.

[3] In *Gaines* v. *Anderson*, 421 F. Supp. 337 (D. Mass. 1976), a three-judge panel in the Federal District Court ruled on the constitutionality of an earlier version of § 1A of G. L. c. 71, as amended by St. 1973, c. 621, which provided for a period of silence or meditation at the commencement of the school day. The Gaines court noted that although the word "prayer" has a sectarian meaning, the word "meditation" does not. *Gaines, supra* at 342-343 & n.8. As such, the choice given to the student to pray or to meditate on purely secular matters did not violate the establishment clause of the First Amendment. Rather, the secular and pedagogical practice of preparing the students to engage in a day of study by requiring them to turn their thoughts silently to serious matters, was constitutionally permissible. *Gaines, supra* at 346.

203, 222 (1963). "Under the authorities the establishment clause is interpreted to prohibit religious observances on public school property even when these are nondenominational and participation in them on the part of pupils is voluntary." *Kent, supra* at 240.

Neither the fact that the opening period may sometimes result in silent meditation, nor that its observance is by a student volunteer, can serve to free it from the limitations of the Establishment Clause. See *Engel* v. *Vitale,* 370 U.S. 421, 430 (1962); *Kent, supra* at 243-244. "The Court's opinion in the *Schempp* case articulated and applied two tests or guidelines for the decision of establishment clause cases of that order. The Court said (374 U.S. at 222): '. . . The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause *there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.'* (Emphasis added.)" *Kent, supra* at 241.

The purpose of House No. 1454 is clear — the bill seeks to encourage the recitation of prayer in public schools. The opening exercise, if the student volunteer chooses to offer a prayer, is a religious ceremony and is intended by the bill to be so. The effect of the statute would be to return prayer to the public schools. Such a bill would, if enacted, come into clear conflict with the prohibitions of the establishment clause of the First Amendment. We advert once more to the opinion of the court in *Kent*: "When prayers [are to be] daily heard in most classrooms of many public schools in the Commonwealth, and this occur[s] as a result of legislative enactment, it [is] more than a strain to attempt to argue that religion [is] not being advanced in the sense of the Constitution." *Kent, supra* at 245.

Section B of House No. 1454, by asserting that the school prayer bill "shall not establish a religion in Public Schools, just as the prayer by the Chaplains of the Senate and House

of Representatives . . . does not establish [a] religion in our government," attempts to invade the rightful province of the judiciary to adjudicate whether a law conflicts with the requirements of the Constitution. "'This,' in the words of Mr. Chief Justice Marshall, 'is of the very essence of judicial duty.'" *Colo* v. *Treasurer & Receiver Gen.*, *supra* at 553, quoting from *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 178 (1803). In any event, the drafters of this bill appear mistakenly to analogize school prayer to ceremonial practices similar to the one this court held constitutional in *Colo* v. *Treasurer & Receiver Gen.*, *supra* at 561.

Any suggestion that the court's decision in *Colo* v. *Treasurer & Receiver Gen.*, *supra*, provides an answer to the question presented here is in error. The *Colo* court emphatically distinguished the opening prayer of the Legislature from the practice of prayer in public schools by stating that "such invocations are easily distinguishable from the practice of daily prayer . . . in the [public] schools. There the State, by incorporating religious exercises into the context of a compulsory school day, lends at least implicit support to the notion that children should be indoctrinated to accept religion. The purpose of a school is to teach impressionable children, many of whom, because of their ages, cannot be expected to comprehend that school-sponsored prayers are not necessarily 'lessons' to be learned like other aspects of the school program. . . . By contrast, mature legislators may reasonably be assumed to have fully formed their own religious beliefs or nonbeliefs." (Citations omitted.) *Colo*, *supra* at 559.[4] Thus we conclude that the ritual practice of a short prayer before a mature audience is distinguishable from government-sponsored prayer from children whose attendance in school is compulsory.[5]

---

[4] We note that the Justices comprising the quorum in *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550 (1979), were all included in the unanimous full court decision in *Kent* v. *Commissioner of Educ.*, 380 Mass. 235 (1980).

[5] Courts and commentators have noted that school children who are particularly susceptible to the influence of their teachers and who are

We conclude that House No. 1454, if enacted, would violate the First and Fourteenth Amendments to the United States Constitution. Our answer to question 2 is, "No." Our answer to question 2 makes it unnecessary for us to respond to question 1. Accordingly, we beg to be excused from responding thereto.

The foregoing opinion and answer is submitted by the Chief Justice and the Associate Justices subscribing hereto on the thirtieth day of September, 1982.

> EDWARD F. HENNESSEY
> HERBERT P. WILKINS
> PAUL J. LIACOS
> RUTH I. ABRAMS
> FRANCIS P. O'CONNOR

We cannot join in this response of the Justices because we find that this case is utterly indistinguishable from *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550 (1979), on the substantive issues (there will always be accidental differences). In *Colo*, the court found nothing constitutionally offensive in expending public monies to pay the salaries of chaplains of the Massachusetts House of Representatives and Senate who open each day's activities with a prayer. The following language in *Colo* fits school prayer as proposed in the questions like a glove: "There is no evidence that a great degree of government entanglement with religion is occasioned by the employment of legislative chaplains [substitute "student volunteers"]. The prayers offered are brief, the content unsupervised by the State, and attend-

---

intellectually undeveloped have little real and meaningful choice in deciding to decline participation in a religious exercise. See *Schempp, supra* at 290 n.69 (Brennan, J., concurring); *Reed* v. *Van Hoven*, 237 F. Supp. 48, 52 (W.D. Mich. 1965); Choper, Religion in the Public Schools: A Proposed Constitutional Standard, 47 Minn. L. Rev. 329, 343 (1963); Comment, Religious Garb in the Public Schools — A Study in Conflicting Liberties, 22 U. Chi. L. Rev. 888, 893 (1955).

ance completely voluntary. There is no evidence that the State has become embroiled in any difficult decisions about which religions are to be represented or what sorts of invocations are to be offered." *Colo, supra* at 559.

The Justices strain at distinguishing *Colo* by quoting its dictum to the effect that a short prayer may "indoctrinate" (the word belongs to *Colo*) children into the habit of saying a prayer, whereas mature legislators have already been either indoctrinated or not in the habit of prayer, and the prayer in opening the legislative session is really a meaningless liturgy anyway, or to use the Justices' language, a "ritual practice." To state this is to refute it.

We just cannot see any real difference between *Colo* and the suggested format for school prayer. Indeed, *Colo* presents a stronger case for prayer banning under the majority's secularistic interpretation of the First Amendment to the United States Constitution because of the salaries paid to the chaplains from public funds.

JOSEPH R. NOLAN
NEIL L. LYNCH