COMMITTEE FOR VOLUNTARY PRAYER, Appellant,

v.

John W. WIMBERLY, et al., Appellees.

No. 96–CV–703.

District of Columbia Court of Appeals.

Argued Oct. 1, 1997.
Decided Dec. 30, 1997.

David W. New, Washington, DC, for appellant.

Judith E. Schaeffer, with whom Arthur B. Spitzer, and Elliot M. Mincberg, were on the brief, Washington, DC, for appellees.

Harvey L. Reiter, Steve K. Green, and Jonathan D. Schneider, Washington, DC, filed an amici curiae brief on behalf of American Jewish Congress and Americans United for Separation of Church and State.

Before STEADMAN, and REID, Associate Judges, and NEWMAN, Senior Judge.

REID, Associate Judge:

Appellant, the Committee for Voluntary Prayer,[1] appeals from the judgment of the trial court granting appellees, including Rev. John W. Wimberly, Jr.,[2] summary judgment and enjoining the District of Columbia Board of Elections and Ethics from accepting as "a proper subject of initiative" the District of Columbia Public School Voluntary Prayer Initiative ("the proposed prayer initiative"), under D.C.Code § 1–1320(b) (1992). We affirm.

## FACTUAL SUMMARY

On May 16, 1995, the District of Columbia Board of Elections and Ethics, by a vote of 2–1, accepted the proposed prayer initiative as a proper subject of initiative within the meaning of the D.C.Code provision setting forth the process for voter initiated measures which may become law through a voter election. D.C.Code § 1–1320. Sections 2, 3 and 4 of the proposed prayer initiative read as follows:

Section 2. On public school, other public [sic], or other property, non-sectarian, non-proselytizing student-initiated voluntary prayer, invocations and/or benedictions, shall be permitted during compulsory or non-compulsory school-related student assemblies, school-related sporting events, school-related graduation or commencement ceremonies, and other school-related events.

Section 3. Nothing in this act shall otherwise diminish the right of any student or person to exercise his or her rights of free speech and religion, including prayer, as permitted by the United States Constitution on public school or other public property, or other property, at times or events other than those stated in Section 2.

Section 4. The exercise of these rights on public school or on other public property, or on other property for school-related activities, by students or others, shall not be construed to indicate any support, approval, or sanction by the District of Columbia, any political subdivision thereof, municipal corporation, governmental entity of any description, or any agent or employee of any governmental entity of the contents of any such prayer, invocation, benediction, or other activity, or be an unconstitutional use of any public school property or other public property, or be the promotion or establishment of any religion or religious belief.

---

1. The District of Columbia Board of Elections was the original defendant in this case, but elected not to file an appeal. The Committee for Voluntary Prayer intervened on the side of the defendant.

2. Other plaintiffs included the American Civil Liberties Union of the National Capital Area, People for the American Way, and several individuals.

On June 12, 1995, Rev. Wimberly and others filed suit against the Board, challenging its acceptance of the proposed prayer initiative under D.C.Code § 1–1320(b)(1); the District of Columbia Human Rights Act, D.C.Code § 1–1320(b)(1)(C); and the First Amendment to the United States Constitution. On June 19, 1995, the Committee for Voluntary Prayer filed a motion to intervene in the lawsuit on the side of the Board of Elections and Ethics. The motion was granted on July 31, 1995. The Committee for Voluntary Prayer and Rev. Wimberly, *et al.*, moved for summary judgment.

The trial court sought to apply its understanding of this court's "use of the term 'patent' " (or patently unconstitutional) in *Hessey v. Burden*, 615 A.2d 562 (D.C.1992), and concluded that "this case presents one of those few extreme situations which the *Hessey* court recognized might arise and properly allow the Superior Court to determine that a proposed measure was not a proper subject for initiative" because it is "patently, obviously, and unquestionably unconstitutional." After its analysis, the trial court granted summary judgment in favor of appellees on April 3, 1996.

Appellant filed a motion to alter or amend the trial court's judgment and argued, *inter alia*, that the trial court "could have allowed part of the initiative to go forward, in particular, the graduation prayer portion." [3] On May 1, 1996, the trial court denied the motion to alter or amend, "for the reasons stated in [its] order entered on April 3, 1996." The Committee for Voluntary Prayer filed a timely appeal.

**ANALYSIS**

**I.**

We determine first whether the trial court abused its discretion in conducting a pre-election constitutional review of the proposed prayer initiative.[4] In *Hessey, supra,* we expressed agreement "with the majority of courts which hold that [pre-election constitutional] review [of proposed initiatives] is imprudent." *Id.* at 574. Further, we said: "[w]e are … not persuaded that D.C.Code § 1–1320(b) requires that all legislation enacted by initiative be held constitutional by either the Board or the Superior Court before that initiative may be classified as a 'proper subject.' " 615 A.2d at 574. However, we recognized that in certain "extreme" cases the trial court, in its discretion, could conduct a pre-election review of a proposed initiative's constitutionality. As we put it:

> there may be extreme cases in which it would be both appropriate and efficient to decide the constitutionality of a proposed initiative. An initiative proposing to establish an official religion in the District of Columbia, for example, would be patently unconstitutional. If someone proposed such a measure for submission to the voters, the Board and the Superior Court might well decide to classify it as an improper subject before public funds are spent on an election.

*Id.* We cautioned, however, "that the court's jurisdiction should be very sparingly exercised, and that in the great majority of cases the court in its discretion should decline to consider pre-election challenges to the constitutionality or legality of an initiative." *Id.*[5]

3. Appellants maintained that the following language in section 2 of the proposed prayer initiative could have been stricken before the initiative was submitted to the voters: "compulsory or non-compulsory school-related student assemblies, school-related sporting events, … and other school-related events." Thus, the proposed prayer initiative would have been limited to "non-proselytizing student-initiated voluntary prayer, invocations and/or benedictions … during school-related graduation or commencement ceremonies."

4. The Committee for Voluntary Prayer urges us to permit the voters of the District to decide whether to approve the proposed prayer initiative. Whatever may be the appeal of this argu-

ment, we are bound by the decisions of this court and of the United States Supreme Court which clearly are applicable in the District of Columbia. Moreover, it would be an exercise in futility for the citizens of the District to vote approval of the proposed prayer initiative if it conflicts with the Constitution of the United States and applicable Supreme Court decisions. Eventually the conflict would be resolved against the validity of the initiative.

5. In *Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), a case on review from a federal court which involved a state statute, not a proposed initiative, the Supreme Court cautioned against judicial review of the constitutionality of all aspects of a statute "in advance of efforts to

Accordingly we said, "as a matter of trial court discretion, such review should be reserved for the truly extreme case[s]." *Id.*

■ We conclude that the trial court did not abuse its discretion in identifying the present case as one of the few suitable for a pre-election constitutional review. See *Johnson v. United States,* 398 A.2d 354 (D.C.1979) for an analysis of the discretion standard. In light of Supreme Court precedent, identified *infra,* section 2 of the proposed prayer initiative raises constitutional issues on its face. Accordingly, it was appropriate for the trial court to consider whether this matter fell into one of those "extreme cases" permitting pre-election constitutional review, and to conclude that pre-election review was necessary. Thus, the trial court did not abuse its discretion.[6]

## II.

■ On the record before us, our next task is to determine whether the trial court committed error in granting summary judgment as a matter of law in favor of appellees. Super. Ct. Civ. R. 56(c). The First Amendment to the Constitution of the United States, by which the District of Columbia is bound, conveys complex mediating principles regarding the religion clauses contained in that amendment. One principle insists upon governmental neutrality in matters of religion; another principle offers accommodation of religion under appropriate circumstances. See *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). Moreover, the First Amendment guarantees the free exercise of religion for adherents to a variety of religious dogmas, but as Justice Kennedy said in his majority opinion in *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), "[t]he principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause." *Id.* at

587, 112 S.Ct. at 2655. We review the trial court's decision that the proposed prayer initiative is not a proper subject of initiative with these fundamental principles in mind.

■ Despite the "saving" language set forth in sections 3 and 4 of the proposed prayer initiative, we agree with the trial court that section 2 clearly conflicts with decisions of the Supreme Court interpreting the establishment and free exercise of religion clauses of the First Amendment to the Constitution. See *Lee, supra; School Dist. of Abington Township v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1995); and *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).

Section 2 of the proposed prayer initiative specifies that on any property, public school or otherwise, where "compulsory or non-compulsory" school-related functions are held (including assemblies, sporting events, graduation and commencement exercises), "nonsectarian, non-proselytizing student-initiated voluntary prayer, invocations and/or benedictions, shall be permitted." In *Lee, supra,* a case involving non-sectarian invocations and benedictions at graduation ceremonies, Justice Kennedy, writing for the majority, reiterated that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools ... [and that] prayer exercises in public schools carry a particular risk of indirect coercion." *Id.* at 592, 112 S.Ct. at 2658. Moreover, "[w]hat to most believers may seem nothing more than a reasonable request that the nonbeliever respect their religious practices, in a school context may appear to the nonbeliever or dissenter to be an attempt to employ the machinery of the State to enforce a religious orthodoxy." *Id.*

The fact that some of the school-related events covered by the proposed prayer initia-

apply the separate provisions" because doing so "is analogous to rendering an advisory opinion upon a statute or a declaratory judgment upon a hypothetical case." *Id.* at 402, 61 S.Ct. at 967.

6. In *Hessey,* we gave as an *example* of such an extreme case a statute that was "patently unconstitutional." 615 A.2d at 574. Contrary to the

Committee for Voluntary Prayer's argument, however, that was not presented as necessarily the *sole* standard for pre-election constitutional review of a proposed initiative. Indeed, to adopt such a "hard and fast" rule might leave no choice with the trial court, and thus, might be inconsistent with the notion of discretion. See *Johnson v. United States, supra,* 398 A.2d at 361.

tive are compulsory underscores the coercion which may be brought to bear on students who do not share the religious views of students who initiate prayer. Subtle coercion exists even for non-compulsory school-related functions, as *Lee* recognizes. *Id.* at 593–96, 112 S.Ct. at 2658–60. Both types of coercion, direct and indirect, are prohibited by *Lee. Id.* at 599, 112 S.Ct. at 2661–62. Hence, at least with respect to graduation or commencement ceremonies, section 2 of the proposed prayer initiative is unconstitutional under *Lee*.[7]

While *Lee* stressed the coercive nature of school sanctioned prayers under the establishment clause of the First Amendment, *Jaffree* emphasized concepts set forth in *Lemon, supra* and *Schempp, supra,* in striking down sections of a state statute authorizing teacher-led voluntary prayer and periods of silence for meditation and voluntary prayer. Under these concepts, legislation passes constitutional muster under the establishment clause of the First Amendment only if (1) it has a "secular legislative purpose"; (2) "its principal or primary effect ... neither advances nor inhibits religion"; and (3) it does "not foster 'an excessive government entanglement with religion.'" *Jaffree*, 472 U.S. at 55–56, 105 S.Ct. at 2489 (quoting *Lemon, supra*, 403 U.S. at 612–13, 91 S.Ct. at 2111) (other citations omitted). *See also Schempp, supra*, 374 U.S. at 222, 83 S.Ct. at 1571–72. "In addition, *Jaffree* emphasized yet another concept, endorsement of religion." *Id.* at 56, 105 S.Ct. at 2489 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 690, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). Because the teacher-led voluntary

prayer "was an effort on the part of the State of Alabama to encourage a religious activity," *Jaffree, supra*, 472 U.S. at 41, 105 S.Ct. at 2481, and because the periods of silence for meditation and voluntary prayer "convey[ed] a message of endorsement ... of religion", *Jaffree*, 472 U.S. at 61, 105 S.Ct. at 2492, the Supreme Court invalidated both provisions under the establishment clause of the First Amendment.

Here, section 2 of the proposed prayer initiative has the clear purpose of fostering prayer in the public schools. In its brief, the Committee for Voluntary Prayer states that "[t]he purpose of the prayer initiative is to empower the students to make the decision for themselves ... whether they want to pray or not." However, section 2 is addressed only to those students who wish to initiate prayer. It would place the District of Columbia public school teachers and principals, as agents of the District, in the position of endorsing legislation which has the purpose of fostering prayer by students in the public schools, and whose principal and primary effect is to advance the religious views of those students who lead school prayers. We see no distinction between the teacher-led voluntary prayer struck down in *Jaffree* and the student-led prayer envisioned by the proposed prayer initiative.[8] In both instances, the District would cease to abide by the fundamental principle of neutrality required by the establishment clause. In short, we cannot say that the trial court erred in concluding that Rev. Wimberly and others were entitled to summary judgment as a matter of law.[9]

---

7. The Committee for Voluntary Prayer urges us to adopt the approach set forth in *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963 (5th Cir. 1992), *cert. denied*, 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993) (*Jones II*), decided after *Lee*. There, the fifth circuit upheld a school district's resolution "permitting high school seniors to choose student volunteers to deliver nonsectarian, non-proselytizing invocations at their graduation ceremonies", concluding that the resolution did not violate the establishment clause. *Id.* at 964. Although the Supreme Court had vacated the fifth circuit's decision in *Jones v. Clear Creek Indep. Sch. Dist.*, 930 F.2d 416 (5th Cir.1991) (*Jones I*) (which also upheld the school district's resolution) after *Lee, supra*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), the fifth circuit declined to reach a different result in *Jones II*. We do not adopt *Jones II*

because it is clearly at odds with *Lee*. Indeed, during oral argument counsel for the Committee for Voluntary Prayer very candidly stated: "*Lee v. Weisman* is the law of the land except for the fifth circuit."

8. Other jurisdictions have reached the same conclusion when reviewing provisions virtually identical to section 2 of the proposed initiative. *See, e.g., Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir.) cert. denied, —— U.S. ——, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996); *Opinions of the Justices to the House of Representatives*, 387 Mass. 1201, 440 N.E.2d 1159 (1982).

9. Because of our conclusion, we do not reach the argument that the proposed prayer initiative violates D.C.Code § 1–2520(1) (Supp.1997), the sec-

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

tion of the District of Columbia Human Rights Act which currently specifies:

It is an unlawful discriminatory practice, subject to the exemptions in § 1–2503(b), for an educational institution:

(1) To deny, restrict, or to abridge or condition the use of, or access to, any of its facilities

and services to any person otherwise qualified, wholly or partially, for a discriminatory reason, based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, political affiliation, source of income or disability of any individual.