**Jane DOE, Individually and as Next Friend of John Doe**

v.

**The ALDINE INDEPENDENT SCHOOL DISTRICT, et al.**

Civ. A. No. H–80–2574.

United States District Court,
S.D. Texas,
Houston Division.

July 15, 1982.

Rex D. VanMiddlesworth, Houston, Tex., for plaintiff; Stefan Presser, Houston, Tex., of counsel.

Jack Fields, U.S. Congressman, Eighth Dist., Tex., Washington, D.C., and Daniel J. Popeo, Gen. Counsel, Paul D. Kamenar, Dir. of Lit., Washington Legal Foundation, Washington, D.C., amicus curiae.

F. James Wunderlich, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

In this action, an anonymous plaintiff brought suit against the Aldine Independent School District (the District) for violation of plaintiff's constitutional rights. Specifically, plaintiff contended that the recitation and singing of a school prayer on Aldine Independent School District property constituted a violation of the first amendment prohibition against the establishment of religion. Plaintiff requested a preliminary injunction, a declaratory judgment, damages, and attorneys fees.[1] Presently before the court is plaintiff's motion for summary judgment on the issue of the constitutionality of the activity which is the source of plaintiff's complaint.

### I. Statement of Stipulated Facts

The words of the prayer which are the source of the controversy are the following: "Dear God, please bless our school and all it stands for. Help keep us free from sin, honest and true, courage and faith to make our school the victor. In Jesus' name we pray, Amen." These words are posted in raised block letters on the wall over the entrance to the gymnasium at Aldine Senior High School and are recited or sung by students to music played by the Aldine School band at athletic contests, pep rallies, and at graduation ceremonies. These events take place in the gymnasium and at the football stadium, which are the property of the District. These activities take place before or after regular school hours,

---

1. The request for a preliminary injunction was withdrawn when at the hearing it was revealed that plaintiff was no longer a student at Aldine Senior High School.

but are sponsored by Aldine Senior High School and form a part of the school's regular extracurricular program. The recitation or singing is frequently initiated by the high school principal or other school employees. Although students are required to assemble in the gymnasium for certain school programs, attendance at any event during which the prayer is recited or sung is voluntary. In addition, no one is required to sing or recite the words, nor is anyone obliged to stand when the words are recited or sung.

## II. *The Establishment Violation*

The first amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." This amendment was made applicable to the states by the Supreme Court in *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). In this same case, the Court, quoting the words of Thomas Jefferson, clearly articulated the purpose behind the first amendment's prohibition "to erect a wall of separation between church and state." *Id.* at 16, 67 S.Ct. at 512. The Court also set forth its view of the effect the constitutional prohibition has on the operation of government:

> The "establishment of religion" clause of the first amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in an amount,

large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. *Id.* at 15, 67 S.Ct. at 511.

In the instant case, the court has before it two interrelated questions: (1) whether the activities[2] of the defendants violated the establishment clause or (2) whether, as defendants contend, the restriction of those activities would mean an impermissible encroachment on the individual student's constitutional right to freely exercise his or her religion.

█ There is no doubt that the words of the Aldine school song constitute a prayer since they call on God for His blessing and contain an avowal of divine faith. *Engle v. Vitale,* 370 U.S. 421, 424–25, 82 S.Ct. 1261, 1263–64, 8 L.Ed.2d 601 (1962); *Hall v. Bradshaw,* 630 F.2d 1018, 1020 (4th Cir.1980).

### A. *The Test for an Establishment Clause Violation*

█ The Supreme Court has confronted this issue before in the public school setting and, as a result of its appreciation for the delicacy of the situation and concern that constitutional rights be protected, has formulated a test for ascertaining if a school has impermissibly participated in an establishment of religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). This test comprises three questions: (1) Does the policy or practice have a nonreligious purpose? (2) Is the primary effect of the policy or practice one which neither advances nor inhibits religion? and (3) Does the policy or practice avoid an excessive entanglement with religion? If the answers to all three questions

---

**2.** The prayer is at times recited and at times sung. The singing of the prayer involves no constitutional distinction. Each of these practices, under the circumstances of this case, is proscribed by the first amendment. Though the act of posting the prayer on the gymnasium wall is distinct from the initiation of its singing

and recitation, the court proceeds with the analysis as though both acts are part of the same religious practice. It would seem, however, that the posting of the words alone is unconstitutional in light of *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).

are yes, the school's activity is not an unconstitutional participation in the establishment of religion. *Id.* at 612–13, 91 S.Ct. at 2111. *Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d 1038 (5th Cir.1982).

## B. *The Secular Purpose Question*

■ In answer to the first question of the *Kurtzman* test, defendants (speaking through amicus curiae)[3] assert that the school prayer has the clear secular purpose of instilling "in the students a sense of school spirit or pride ... [which] has a beneficial effect on the student body and contributes to an increase in morale, and concommitantly lessens disciplinary problems." Brief of Amicus Curiae at 9. This argument misconstrues the law on this point. A school district or other governmental body cannot seek to advance nonreligious goals and values, no matter how laudatory, through religious means. *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). In *Hall v. Bradshaw,* 630 F.2d 1018 (4th Cir.1980), the court stated, "If a state could avoid the application of the first amendment in this manner [by using religious means to further nonreligious goals], any religious activity of whatever nature could be justified by public officials on the basis that it has beneficial secular purposes" (at 1020–21). Additionally, when a nonreligious purpose may be promoted through nonreligious means, a state may not employ religious ones. *Abington School District v. Schempp,* 374 U.S. at 278, 83 S.Ct. at 1601 (Brennan, J., concurring); *Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d at 1045.

■ In the instant case it is apparent that the goals and values Aldine School District seeks to instill in its students may be encouraged through nonreligious means. Therefore, as a matter of law, defendants' practice of posting the disputed words over the gymnasium and of encouraging its recitation fails to satisfy the secular purpose requirement of the first question of the Supreme Court's test.

## C. *The Primary Effect Question*

■ Defendants contend that the primary effect of the singing or reciting the prayer neither advances nor inhibits religion because the students are under no obligation to participate, state employees have only a limited involvement,[4] and the contested activities do not take place in a religious setting. These assertions are based on a misunderstanding of the applicable law. The degree of state employee involvement has no bearing on this issue. That a state employee may be minimally involved in an activity may bear on the question of whether there is state action, but not on the question of whether the primary effect of a practice is to advance or inhibit religion. Also, despite defendants' insistence to the contrary, the fact that

3. The court combines three sources of information in determining the defendants' position on the various legal issues in this case; the memorandum in opposition to plaintiff's motion for summary judgment, the amicus curiae brief filed by Congressman Jack Fields, and the arguments proffered at the hearing on the motion for summary judgment by attorney for defendants, Mr. James Wunderlich. The amicus brief does not speak for the defendants, but in this case the amicus seems to offer the most elaborate statement of defendants' basic arguments.

4. In the amicus curiae brief it was asserted that only the band and choir director was involved in the singing of the song. Amicus Brief at 9. This assertion is in apparent conflict with the stipulated fact that the principal frequently initiated the singing of the prayer.

The court does not resolve issues of fact in determining that the principal initiates the recitations which resolution would, of course, be improper in ruling on a motion under Rule 56 of the Federal Rules of Civil Procedure. Rather, the court considers the fact established because the Aldine High School Principal, Vernon L. Lewis, so testified at the hearing and defendants in no manner contested the principal's construction of the Aldine High School practice with regard to this religious activity.
Nevertheless, it is undisputed that at least the band and choir director did initiate recitation or singing of the school prayer. This degree of state involvement is sufficient to raise a first amendment question.

participation in a religious activity is not obligatory will not prevent a constitutional conflict. The limits of the first amendment are not avoided by simply making the singing of the prayer voluntary. As has been emphasized repeatedly by the courts, voluntariness is not relevant to a first amendment inquiry. *Engel v. Vitale,* 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601; *Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d at 1046; *See Abington School District v. Schempp,* 374 U.S. at 223, 83 S.Ct. at 1572.

In this case, Aldine Senior High School sponsored the events where the prayer was sung. Pep rallies, football games, and graduation ceremonies are considered to be an integral part of the school's extracurricular program and as such provide a powerful incentive for students to attend. As said in *Lubbock,* "it is the Texas compulsory education machinery that draws the students to the school event and provides any audience at all for the religious activities . . ." (at 1026). Since these extracurricular events were school sponsored and so closely identified with the school program, the fact that the religious activity took place in a nonreligious setting might create in a student's mind the impression that the state's attitude toward religion lacks neutrality. The Supreme Court has noted that "to an impressionable student even the mere appearance of secular involvement in religious activities might indicate that the state had placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit." *Roemer v. Board of Public Works,* 426 U.S. 736, 750, 754, 96 S.Ct. 2337, 2346, 2348, 49 L.Ed.2d 179 (1976).

This court has found that defendants' practice carries with it the implied recognition and approval of religious activity. Not only are the words in question recited or sung on school property at school events but also, most significantly, this frequently takes place at the initiation of the principal of Aldine High School or another employee of the District. *See Hall v. Bradshaw,* 630 F.2d at 1021. The court believes that when the nature and circumstances of defendants' actions are viewed in their entirety, the natural consequences of these actions would be the advancement of religion by indicating to students that the state advocates religious belief. In view of this probable effect on Aldine students, the defendants cannot satisfactorily respond to the question of the activities' primary effect.

## D. The Entanglement Question

Defendants contend that they have avoided an excessive entanglement with religion because (1) the prayer is recited only at times which do not impinge on the educational function of the school, and (2) both attendance at events where the prayer is sung or recited and participation in the actual singing are voluntary.

This memorandum has already dealt with defendants' position concerning voluntary participation and so turns to defendants' first assertion.

The entanglement analysis is concerned with procedural matters. Here the relevant inquiry is whether the state must engage in continuing administrative supervision of the religious activity. *Brandon v. Board of Education of Guilderland Central School District,* 635 F.2d 971, 979 (2d Cir. 1980). If the state must so supervise, then church and state are excessively intertwined. *Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d at 1047.

In this case, it is apparent that Aldine High School personnel are active in the supervision of the events where the religious activity occurs. The facts here are similar to those of *Lubbock* where the court found that in compliance with Texas state law, the Lubbock Independent School District had exercised supervision over students who were meeting voluntarily before and after school hours for religious purposes on school grounds. *Id.* at 1047. In that case, the continuing supervision plus the use of the District's facilities resulted in a finding of excessive entanglement with religion. *Id.*

The finding in *Lubbock* controls on the entanglement question. Aldine School District facilities were used as the site of the religious activity and District employees were involved in supervising both the school property and the events which took place there. Therefore, as a matter of law, the court concludes that the defendant did not avoid an excessive entanglement with religion and has not met the third prong of the *Kurtzman* test.

### III. *Free exercise of Religion*

■ Finally, defendants have taken the position that restriction on the activity at issue would be an improper interference on the students' right to the free exercise of religion. Amicus Brief at 8. However, the activity which the court addresses is not an independent, unofficial invocation of God's help by the students, but rather a state initiated, encouraged, and supervised regular practice which occurs on school property during extracurricular events which are an important part of the school's program. The distinction is significant and controlling. The former is an inviolable right; the latter, according to the purpose, effect, and entanglement analysis of the Supreme Court, is an impermissible establishment of religion.

Accordingly, this court holds that the practice of initiating, leading, or encouraging the recitation or singing of the "Aldine School Prayer" and the posting of the words to the prayer is in violation of the first amendment, and plaintiff's motion for summary judgment is hereby GRANTED.