**Jerry DUFFY, on his own behalf and as next friend of John P. Duffy, his minor son, Plaintiff,**

**v.**

**LAS CRUCES PUBLIC SCHOOLS, et al., Defendants.**

**Civ. No. 81–0876–JB.**

United States District Court, D. New Mexico.

Feb. 10, 1983.

Saenz & Gonzales, Dan A. Gonzales, Angel L. Saenz, Las Cruces, N.M., for plaintiff.

Simons, Cuddy & Friedman, C. Emery Cuddy, Jr., Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court for resolution of the merits of the plaintiff's complaint. At issue is the constitutionality of § 22–5–4.1, NMSA 1978, a statute authorizing local school boards in New Mexico to implement a daily moment of silence in public schools within the local school districts. Having considered the evidence adduced at trial, the arguments of counsel and the relevant authorities, the Court concludes that § 22–5–4.1 represents an unconstitutional infringement on the Establishment Clause of the First Amendment. This memorandum opinion shall constitute the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Jerry Duffy is a taxpayer and a citizen of New Mexico. He brought this action on his own behalf, and on behalf of his son, John P. Duffy, a minor. John Duffy is also a citizen of New Mexico, and currently attends public school in the Las Cruces Public School District [hereinafter, the District].

The District, a defendant herein, is responsible for administering that part of the New Mexico public school system which operates in and near Las Cruces. The District's governing body is the Board of Education of the Las Cruces Public Schools [hereinafter, the Board]. The Board adopts and oversees enforcement of the policies governing the operations of the District.

Defendants Joan M. Pucelik, Walter L. Rubens, Vincent Boudreau, Mrs. Tom Salopek, and Everett Crawford are the current members of the Board. Each was duly elected by the qualified voters residing in the District. At all pertinent times prior to June 30, 1982, Defendant John E. Stablein was the Superintendent of Schools for the District. Stablein was selected by the Board to serve as Superintendent. Since July 1, 1982, Harold W. Floyd has served as Superintendent. The Superintendent of Schools is responsible for administering pol-

icies enacted by the Board in the schools of the District.

The challenged statute, § 22–5–4.1, NMSA 1978, provides that:

Each local school board may authorize a period of silence not to exceed one minute at the beginning of the school day. This period may be used for contemplation, meditation or prayer, provided that silence is maintained and no activities are undertaken.

The law was introduced during the 1981 Session of the New Mexico Legislature as House Bill 205. The legislation was sponsored by Representatives Randall Sabine and William O'Donnell, both of whom reside in Dona Ana County, in or near Las Cruces. H.B. 205 was passed by the Legislature during the 1981 session, and signed into law by Governor Bruce King.

In late 1980 or early 1981, Representative O'Donnell asked Mr. William McEuen, General Counsel to the State Department of Education, to draft a bill which would permit students to pray in school. O'Donnell acted at the urging of a Mrs. Jean Walsh. O'Donnell instructed McEuen to confer with Walsh for advice on the matter. O'Donnell also instructed McEuen to provide recommended language for a bill which would authorize some form of prayer in New Mexico public schools.

Mrs. Walsh directed McEuen's attention to the case of *Gaines v. Anderson,* 421 F.Supp. 337 (D.Mass.1976). In that case, the court upheld the constitutionality of a statute very similar to that being challenged in this case. In drafting H.B. 205, McEuen relied heavily on the statute which was at issue in *Gaines v. Anderson.* H.B. 205 adopts verbatim the material language of the Massachusetts statute. The word "contemplation" was not in the Massachusetts law, but was inserted into H.B. 205, purportedly to demonstrate the neutrality of the statute.

Although there is no formal written legislative history of H.B. 205, it is clear that the pre-eminent purpose of § 22–5–4.1, NMSA 1978, was to establish a devotional exercise in the classrooms of New Mexico public schools. The motive of Representative O'Donnell was to establish prayer in the public schools, as can be seen in his instructions to McEuen. And McEuen perceived the intent of O'Donnell to be to establish prayer in the public schools. In the memorandum to O'Donnell which contained the proposed bill which became H.B. 205, McEuen said that his purpose was to recommend wording for "a bill which would authorize some form of prayer in our public schools."

The plain language of the statute also supports the conclusion that the legislative purpose was to establish prayer in the public schools. Obviously, inclusion of the word "prayer" is a clear indication of the legislative purpose. Indeed, it could hardly be more clear. The defendants urge that the inclusion of the words "contemplation" and "meditation" indicates the "neutral" intent of the legislature. The Court is not persuaded by this argument. It is clear that McEuen inserted these words solely for the purpose of attempting to disguise the religious nature of the bill.

H.B. 205 authorized local school boards to implement the moment of silence. The defendants affiliated with the District and the Board chose to implement the exercise in the public schools of Las Cruces. Therefore, consideration of the purpose behind the implementation is clearly appropriate to this inquiry.

It is clear that the purpose of the Board was to provide a program of prayer in District schools. In the summer of 1981, the Board began discussing the possible implementation of the moment of silence. These discussions were also undertaken at the urging of Jean Walsh. The matter was discussed at various Board meetings throughout the summer of 1981. During these meetings, only the religious aspect of the statute was discussed. At no time did any Board member avow any secular purpose for the moment of silence. It is clear that the defendant Board members and the other persons who attended the Board meetings in the summer of 1981, perceived the sole purpose of § 22–5–4.1, NMSA 1978, to be to permit prayer in the public schools.

Superintendent Stablein was initially opposed to the implementation of § 22–5–4.1. Stablein believed the law to be improper in that it authorized prayer in public schools. He was also concerned about the dispute in which the Board was likely to become embroiled. A school bond election was about to be held, and Stablein was concerned that the school prayer issue would sublimate the bond issue; he did not want to "miff" the voters on the eve of the bond election.

The testimony of the Board members themselves makes clear that they had no secular purpose in implementing the moment of silence. The Board members who voted to implement the exercise did so only because of the pressure being exerted on them by constituents who favored prayer in public schools. While it perhaps cannot be said that the Board members favored prayer in public schools as an abstract proposition, it is clear that they intended to implement a program of prayer in the schools in order to avoid the political wrath of their constituents.

The Board members now say that their purpose in implementing the moment of silence was to enhance discipline and instill in the students the "intellectual composure" necessary for effective learning. These justifications are clearly the product of afterthought. They are no more than an elaborate effort to inject a secular purpose into a clearly religious activity. There is no credible evidence before the Court to support the defendants' contention.

These justifications were never uttered publicly at the Board meetings at which the moment of silence was discussed. It is unlikely that the moment of silence carries any significant benefits to the educational process, and it is clear that the benefits the Board claims to have been seeking could have been better accomplished by means other than the moment of silence. Add to this the fact that no moment of silence was ever considered by the Board prior to the enactment of H.B. 205, despite the educational benefits the defendants now claim arise from the moment of silence. It is clear that the educational benefits alleged

by the Board members are a mere pretext. Their purpose was to institute a devotional exercise in public school classrooms.

The Court finds that the primary effect of § 22–5–4.1 and its implementation by the Las Cruces Board of Education is to advance religion. It is clear that the Legislature intended the moment of silence to be a devotional exercise. It was regarded as such by both the Board members and the members of the community who spoke at the meetings where it was discussed. The memorandum advising parents of the implementation of the program could also be understood as stating that a voluntary, silent devotional exercise was to be instituted in the public schools.

It does not matter whether the moment of silence would be regarded as a proper devotional exercise by a cleric or another person knowledgeable in such affairs. The ill lies in the public's *perception* of the moment of silence as a devotional exercise. If the public perceives the State to have approved a daily devotional exercise in public school classrooms, the effect of the State's action is the advancement of religion.

The dangers inherent in the sovereign placing its imprimatur on a religious exercise are particularly acute where children are involved. As established by Gordon Cawelti, an expert in the fields of curriculum and discipline, children are extremely impressionable and easily influenced. They exhibit a tendency to conform with each other in dress and behavior, and it is psychologically disturbing for a child to be different from his peers. There is a clear and present danger that the children will perceive the moment of silence as government approval of religion.

The fact that § 22–5–4.1 allows not only prayer, but also meditation and contemplation is of no moment. It cannot be seriously argued and certainly cannot be assumed that schoolchildren can discern the nice distinctions concerning the meanings of "meditation," "contemplation" and "prayer."

As discussed above, the Board discussions which preceded implementation, as well as the communications announcing implementation of the moment of silence, left the clear impression that school prayer was the issue. The manner of conducting the moment lends further support to this impression. Under the regulations approved by the Board, the moment of silence is required to occur as soon as possible after the tardy bell. No leeway is allowed which would permit its observance at any other time. If the moment of silence were meant to instill discipline and intellectual composure, such regulations would be inappropriate. Instead, teachers would have the option of invoking the moment of silence before each class, after each recess, or after the students return from lunch. The fact that the moment of silence is rigidly held at the same time every day suggests to the public that it has no disciplinary or educational significance.

The defendants' expert witnesses concede that there has been no meaningful research on the practical effects of the moment of silence on the educational process. The Court finds that there are no significant educational benefits from the moment of silence as implemented by the defendants. The evidence to the contrary is entitled to no weight in the view of the Court. The marginal benefits that may be realized are clearly outweighed by the danger in the public's perception of the moment of silence as a State-approved religious activity.

The moment of silence as implemented by the defendants requires a good deal of governmental involvement in the act of prayer which would not exist had § 22–5–4.1 not been instituted. The exercise is undertaken on school grounds during school hours. Teachers have the duty to maintain silence by all of the students, and to insure that no other activities are undertaken. The Superintendent of Schools and, ultimately, the Board are responsible for seeing that Board policies, including the moment of silence, are carried out in the classrooms of the District.

It is clear that the moment of silence has caused a good deal of political divisiveness, much of which is along sectarian lines in the community, and has the potential to cause a good deal more. During the time immediately preceding the adoption of the moment of silence, a concerted effort in favor of adoption was conducted by local religious groups. The effort included petition drives by local churches and an impressive letter-writing campaign. It is, of course, significant that the proponents of adoption regarded § 22–5–4.1 as a method of instituting prayer in the public schools. The opponents were less organized, but they did exist. Their uncoordinated efforts were to little avail, and their protests were overwhelmed by the religious groups' campaign to adopt the moment of silence.

The matter was certainly divisive within the school system itself. A poll was conducted among the student councils and the teachers to determine their views on the matter. Although the members of student councils cannot be considered a truly representative sample for determining student attitudes, the Court finds it significant that 27% of the students polled were against implementation of the moment of silence. Even more unsettling is the fact that the teachers polled disapproved of the moment of silence by a margin of 47.26% to 42.36%. Indeed, at least four teachers have refused to conduct the moment of silence in their classrooms.

The Superintendent is aware that there are teachers in the District who refuse to conduct the moment of silence. Their refusal is punishable as a failure to follow Board policy. Defendant Stablein decided that, for the time being, there would be no disciplinary action against these teachers. However, it is clear that future action against these teachers is not foreclosed.

The most compelling evidence of political divisiveness, however, came from the Board members themselves. It is clear that their concern about the upcoming bond election was a major factor in their decision to implement § 22–5–4.1. They worried that the voters would not consider the substan-

tive merits of the bond proposal, but would instead cast their votes along sectarian lines depending on the Board's decision on the moment of silence. Thus, they were concerned that school prayer would be the dominant issue in the bond election. In order to avoid that possibility, they instituted the moment of silence. By so doing, they refused to independently judge the secular merits of the moment of silence proposal and willingly submitted to the religious arguments.

The moment of silence was observed in District schools beginning on October 12, 1981. Each of the 16,000 students in District schools is affected. Although the program was allegedly adopted on a "trial basis," there is no indication that the program will be voluntarily discontinued.

CONCLUSIONS OF LAW

The plaintiff brings this action under 42 U.S.C. § 1983 to redress the violation, under color of state law, of rights guaranteed to him by the Constitution of the United States and the Constitution of the State of New Mexico. He seeks injunctive relief under § 1983 and declaratory relief under 28 U.S.C. § 2201. The Court has jurisdiction over the subject matter under 28 U.S.C. § 1343(3).

 The most commonly recognized purpose of the First Amendment is to prevent any single denomination from being established as a state church. *Everson v. Board of Education,* 330 U.S. 1, 8, 67 S.Ct. 504, 507, 91 L.Ed. 711 (1947); *Beck v. McElrath,* 548 F.Supp. 1161 at 1162 (M.D.Tenn., 1982). However, the protection of the First Amendment does not stop there. Not only is the State prohibited from adopting a state religion, but also from passing any law relating to the establishment of religion. The Supreme Court has made clear the scope of the prohibition.

Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from

church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining, or professing religious beliefs or disbeliefs, for church attendance or nonattendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between Church and State."

*Everson, supra* 330 U.S. at 11, 67 S.Ct. at 509.

In the recent past, the Supreme Court has considered a number of cases touching upon issues similar to those in this case. These cases have resulted in a three-prong analysis which may be stated as follows:

[T]o pass muster under the Establishment Clause the law in question first must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive government entanglement with religion.

*Committee for Public Education v. Nyquist,* 413 U.S. 756, 774, 93 S.Ct. 2955, 2966, 37 L.Ed.2d 948 (1973). *See also Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

In this case, the plaintiff challenges § 22–5–4.1, NMSA 1978, under the Establishment Clause. The Court finds that § 22–5–4.1 does in fact violate the Establishment Clause of the First Amendment.

*Establishment Clause*
*Secular Legislative Purpose*

The first inquiry in the Establishment Clause analysis goes to the purpose of the legislature in adopting § 22–5–4.1. Based on the Court's findings of fact, it must be concluded that the legislature had no clear-

ly secular purpose in adopting the law. Having failed to pass the first test of the *Lemon v. Kurtzman* analysis, the law must be deemed unconstitutional irrespective of the two remaining tests, which also will be addressed below. *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).

Of course, both the defendants and the legislative sponsors of the statute deny that they acted with a religious purpose. The evidence indicates otherwise.

> At the core of the Establishment Clause is the requirement that a government justify in secular terms its purpose for engaging in activities which may appear to endorse the beliefs of a particular religion. Although courts have rarely looked behind the stated legislative purposes, it is clear that an avowed secular purpose, if found to be self-serving, may "not be sufficient to avoid conflict with First Amendment." *Stone v. Graham,* 449 U.S. 39, 41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980).

*American Civil Liberties Union v. Rabun County Chamber of Commerce,* 678 F.2d 1379, 1390 (11th Cir.1982).

In this case, the legislative avowals of secular purpose are clearly self-serving and the Court is not bound by them. *Karen B. v. Treen,* 653 F.2d 897 (5th Cir.1981); *Hall v. Bradshaw,* 630 F.2d 1018 (4th Cir.1980); *McLean v. Arkansas Board of Education,* 529 F.Supp. 1255 (E.D.Ark.1982). In determining the true purpose of the legislature, the most appropriate starting place is the statute itself.

The presence of the word "prayer" in § 22–5–4.1 is compelling evidence that there was no secular purpose sought to be achieved. As the court observed in *Karen B. v. Treen,*

> the plain language of [the challenged statutes] makes apparent their predominantly religious purpose. Prayer is perhaps the quintessential religious practice for many of the world's faiths, and it plays a significant role in the devotional lives of most religious people. Indeed, since prayer is a primary religious practice in itself, its observance in public

school classrooms has, if anything, a more obviously religious purpose than merely displaying a copy of a religious text in a classroom.

653 F.2d at 901.

The defendants, of course, argue that the words "contemplation" and "meditation" indicate a neutral purpose, and even legislative sensitivity to the people's right to freedom of religion. *See Gaines v. Anderson, supra.* The Court cannot accept this characterization. As discussed in the findings of fact, the Court views the inclusion of these words as a transparent ruse meant to divert attention from the statute's true purpose. Viewed in this light, it can hardly be said that the statute reflects sensitivity to the right to religious freedom. Indeed, it reflects the opposite. The inclusion of the words "contemplation" and "meditation" indicates that the legislature knowingly set out to denigrate the right to freedom of religion, and then sought to conceal the result by including these so-called alternatives to prayer. *See, e.g., Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d 1038 (5th Cir.1982) (school gatherings for "educational, moral, religious or ethical" purposes found unconstitutional); *Beck v. McElrath, supra.* The plain language of the statute indicates a religious purpose.

■ In addition to the statutory language, the courts may consider other factors in determining legislative purpose. Matters such as the historical context of the statute, the events leading up to passage of the act, and the contemporaneous statements of the legislative sponsors may be considered. *McLean, supra* at 1263–1264. In this case, these factors completely undercut the defendants' arguments. As indicated in the Court's findings of fact, the events preceding adoption of the moment of silence and the statements of the legislative sponsors clearly indicate that the purpose of the statute was to return prayer to the schools.

The defendants next argue that as long as some identifiable secular purpose is

served by the statute, it does not run afoul of the Establishment Clause even if there is also a religious purpose. The authority for this proposition is mysterious at best.

The Court has found that no secular purpose is served by the statute. But even if there were such a secular purpose, it is clear that the defendants misapprehend the law. "[T]he state cannot escape the proscriptions of the Establishment Clause merely by identifying a beneficial secular purpose. The inquiry goes beyond this." *Hall v. Bradshaw,* 630 F.2d at 1020. If the State could avoid the application of the First Amendment in this manner, "any religious activity of whatever nature could be justified by public officials on the basis that it has beneficial secular purposes." *DeSpain v. DeKalb County Community School District,* 384 F.2d 836, 839 (7th Cir.1967). *See also American Civil Liberties Union v. Gallatin Area School District,* 307 F.Supp. 637, 641 (W.D.Pa.1969). The defendants' argument is without merit.

■ Finally, the defendants argue that their purpose was merely to accommodate the exercise of the children's right to freedom of religion. *See Lanner v. Wimmer,* 662 F.2d 1349, 1357 (10th Cir.1981). *Lanner* is inapposite. *Lanner* involved a released-time program which allowed students to attend religious classes offered by private entities off school grounds. Such programs are considered an accommodation of religion. *See Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). The defendants apparently argue that a religious activity undertaken on campus, during school hours and under the supervision of teachers paid by the State is the equivalent of the program at issue in *Lanner.* That is clearly not the case. Here, the moment of silence goes far beyond a mere accommodation of the public's right to worship as it pleases. It establishes a devotional exercise on school grounds during school hours with teacher supervision. Far from being an accommodation of religion, it is an establishment of religion with the added element of being compulsory.

The Court concludes that § 22–5–4.1 was enacted and implemented for a religious purpose by the Legislature and the Board. The statute is therefore unconstitutional and its implementation illegal.

*Primary Effect of Statute*

■ In order to survive the Establishment Clause, a statute must have a primary effect which neither inhibits nor advances religion.

> [R]eligious activity under the aegis of the government is strongly discouraged, and in some circumstances—for example, the classroom—is barred. The sacred practices of religious instruction and prayer, the Framers foresaw, are best left to private institutions—the family and houses of worship.

*Brandon v. Board of Education,* 635 F.2d 971, 973 (2d Cir.1980). The Court concludes that the primary effect of the enactment and implementation of § 22–5–4.1 is advancement of religion.

In analyzing this matter, it must always be remembered that we are dealing with children attending public schools. As the Second Circuit Court of Appeals has observed:

> Our nation's elementary and secondary schools play a unique role in transmitting basic and fundamental values to our youth. To an impressionable student, even the mere appearance of secular involvement in religious activities might indicate that the state has placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit.

*Id.* at 978.

In this case, the danger is clear. The debates leading to the adoption of the moment of silence left the clear impression that the issue was prayer in the public schools in the minds of both its supporters and opponents. Once the moment of silence was adopted, the policy of allowing prayer at the beginning of each school day "implies recognition of religious activities . . . as an integral part of the District's . . . program . . . ." *Lubbock Civil Liberties Union, supra,* 669 F.2d at 1045.

This, in combination with the impressionability of secondary and primary age schoolchildren and the possibility that they would misapprehend the involvement of the District in these [matters], renders the primary effect of the policy impermissible advancement of religion. *Id.* To like effect, *see Brandon, supra,* 635 F.2d at 973.

■ The Establishment Clause protects against "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commission,* 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). Here, the State has chosen to sponsor and actively involve itself in the matter of prayer. "A prayer, however, is undeniably religious and has, by its nature, both a religious purpose and effect." *Hall, supra,* 630 F.2d at 1020. By authorizing a time for prayer in the classrooms, the defendants have placed the imprimatur of the State on that religious activity. In so doing, they have impermissibly advanced religion. No other significant secular effects are present, the Court having rejected the testimony of Dr. Thomas Thompson. It is clear, therefore, that the primary effect of § 22–5–4.1 and its implementation is the advancement of religion. The statute is unconstitutional and its implementation is illegal.

*Excessive Entanglement*

■ The third inquiry in the three-prong Establishment Clause analysis is whether the challenged activity fosters an excessive entanglement of church and state. In this case, it is clear that there is such excessive entanglement.

The moment of silence is intended to provide a time, place and atmosphere for prayer. The time chosen is during school hours, and the place is the school grounds. The atmosphere of silence is instilled and maintained by the teachers. These facts alone have been found sufficient to constitute excessive entanglement. *Brandon, supra* at 979; *Karen B., supra* at 903; *Lubbock Civil Liberties Union, supra.* Here, there is an even greater entanglement.

The Superintendent is obligated to enforce the policies of the Board, including the moment of silence. He is responsible for ensuring that District teachers observe the moment of silence. The Superintendent, in turn, answers to the Board. The Board is ultimately responsible for enforcement of the moment of silence policy.

As the Supreme Court observed in *Lemon v. Kurtzman, supra,* "the very restrictions and surveillance necessary to ensure that teachers play a strictly nonideological role give rise to entanglements between church and state." 403 U.S. at 620–621, 91 S.Ct. at 2114–2115.

The Court's conclusion is further supported by the evidence of political divisiveness. Both students and teachers are sharply divided over the moment of silence. Feelings ran high in the community, particularly among the proponents of adoption. Board members feared that refusal to adopt the moment of silence would result in the defeat of their bond proposal, a matter which should have been completely unrelated to the moment of silence.

A broader base of entanglement of yet a different character is presented by the divisive potential of these state programs.... It would be unrealistic to ignore the fact that many people confronted with issues of this kind will find their votes aligned with their faith. Ordinarily, political debate and division, however vigorous or even partisan, are normal and healthy manifestations of our democratic system of government, but political division along religious lines was one of the principal evils against which the First Amendment was intended to protect.

*Lemon, supra,* 403 U.S. at 622, 91 S.Ct. at 2115.

Any government activity with "the potential for impermissible fostering of religion" can cause the sort of divisiveness the Establishment Clause was meant to guard against. *Id.* at 619, 91 S.Ct. at 2114.

By placing its imprimatur on the particular kind of belief embodied in prayer, the state necessarily offends the sensibilities

not only of nonbelievers but of devout believers among the citizenry who regard prayer "as a necessarily private experience." (Citation omitted.)

*Hall v. Bradshaw, supra,* 630 F.2d at 1021. In this case, the moment of silence clearly has the potential for impermissibly fostering religion, and it has caused precisely the sort of political divisiveness along sectarian lines which the Establishment Clause was designed to avoid. *See Lemon, supra* 403 U.S. at 622, 91 S.Ct. at 2115; *Committee for Public Education v. Nyquist,* 413 U.S. at 794–798, 93 S.Ct. at 2976–2978.

The Court therefore concludes that § 22–5–4.1 as implemented by the defendants causes excessive entanglement between church and state. The statute is therefore unconstitutional and its implementation by the defendants illegal.

■ The defendants seem to argue at several points that the encroachment on the plaintiff's rights is minor because the decision of whether to pray during the moment of silence is left with the students. It is well-settled that voluntary exercises are not beyond the reach of the Establishment Clause. *See School District of Abington Township v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Lubbock, supra; Karen B., supra; Collins v. Chandler Unified School District,* 644 F.2d 759 (9th Cir.1981). And, the fact that some might regard the encroachment on religious freedom in this case to be minor is no defense. *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).

The Supreme Court has rejected the argument that relatively minor encroachments may escape scrutiny under the Establishment Clause, for "[t]he breach of neutrality that is today a trickling stream may all too soon become a raging torrent." *Abington School District v. Schempp,* 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963).

*Hall v. Bradshaw, supra* at 1021. Although the encroachment may seem minor to some, it violates the Establishment Clause nonetheless.

### Free Exercise of Religion Clause

■ The plaintiff also claims an encroachment on his right to freely exercise his own religion. While the coercive effect of the moment of silence is clearly present, plaintiff has failed to prove that he or his minor son have been denied the right to freely exercise their religion. On the record, therefore, it cannot be said conclusively that the moment of silence violates the Free Exercise Clause of the First Amendment.

### Defendants' Request for Declaratory Judgment

■ The defendants have counterclaimed for declaratory relief. The defendants seek a judgment declaring that they have an inherent right, apart from § 22–5–4.1, to institute a program of daily periods of silence as a means of encouraging discipline and intellectual composure, and that such a program does not offend either the federal or state constitutions. In addition, the defendants ask the Court to declare that they may continue the moment of silence regardless of the constitutionality of § 22–5–4.1 so long as prayer is neither suggested nor encouraged. In light of the foregoing conclusions of the Court, this relief must be denied.

What the defendants seek, in essence, is an abstract declaration that the defendants could institute a moment of silence in the absence of § 22–5–4.1, assuming there was a secular purpose, a neutral effect, and no excessive entanglement. However, this abstract proposition cannot be divorced from the realities reflected in the Court's findings. The defendants basically ask the Court to declare that if the facts were different, the moment of silence would be lawful. This the Court cannot do.

It may be that a school board has the power to implement a moment of silence without § 22–5–4.1. But that is not the question before the Court. The defendants did not ground their authority in the Board's inherent powers. They relied on § 22–5–4.1. They did not adopt the pro-

gram for purposes of intellectual composure or discipline. Instead, they acted with a religious purpose. Further, while one can conceive of facts indicating that a period of silence neither advances nor inhibits religion, in this case the public perceives the moment of silence as a means of instituting prayer in the public schools. The facts found by the Court are not the facts which are assumed in the defendants' request for declaratory relief.

The Court sees similar difficulties with a declaratory judgment which would allow the moment of silence to be continued even if § 22–5–4.1 is found unconstitutional. Indeed, the Court concludes that the defendants must be permanently enjoined from instituting any program similar to the moment of silence. The reasons therefor are clear.

If the defendants are not so enjoined, the moment of silence issue could well be brought before them again. But the defendants would be more careful to disguise their purpose the next time. With a wink and a nod, they could discuss the secular purposes for the moment of silence, and prohibit any mention of the school prayer issue. Having avoided the factors which lead the Court to rule against them in this case, they could reinstitute the moment of silence.

It would be inimical to allow such a situation to develop. The Court believes that the defendants wish to follow the law. But being human, they might well again accede to constituent pressure and adopt a reworked moment of silence. This reworked moment of silence, free from the patent defects which render it unconstitutional in this case, could not, in the view of the Court, be separated in the mind of the public from the exercise which the Court today finds unconstitutional.

The Court must, therefore, prohibit any future implementation of the moment of silence. This will guarantee that the defendants will not again be pressured into adopting such a program, and insures the integrity of the holding of the Court. It would be a total and inescapable contradic-

tion for the Court to say that § 22–5–4.1 is unconstitutional on the one hand, and on the other to say that an identical program instituted in the wake of the finding of unconstitutionality is valid.

The Court must therefore deny the defendants the relief they have requested, and the counterclaim will be dismissed.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. The enactment of § 22–5–4.1, NMSA 1978, by the Legislature of the State of New Mexico exceeds the scope of legislative power as circumscribed by the First and Fourteenth Amendments of the United States Constitution;

2. Section 22–5–4.1, NMSA 1978, and its implementation in the Las Cruces Public Schools violates the First Amendment of the United States Constitution;

3. Section 22–5–4.1, NMSA 1978, and its implementation in the Las Cruces Public Schools violates Article II, Section 11 of the Constitution of the State of New Mexico in that it gives a preference by law to a particular mode of worship;

4. The defendants shall be enjoined from conducting the minute of silence described in § 22–5–4.1, NMSA 1978, both now and in the future; and

5. The defendants shall take nothing on their counterclaim, and that counterclaim should be dismissed.

A Permanent Injunction, Declaratory Judgment and Final Judgment shall be entered concurrently herewith.