IRVING SHAIN, Chancellor University of Wisconsin-Madison
It has apparently been a practice of the University of Wisconsin's head football coach to lead his team in religious prayer in the locker room prior to a game. You request my opinion on the lawfulness of the following situations related to that practice:
 1) a voluntary pre-game prayer led by a member of the coaching staff;
 2) a few moments of silent meditation in which the players and coaches participate; and
 3) a pre-game prayer organized by the players without the involvement of the coaching staff.
In my opinion, the situations described in questions 2 and 3 may be lawful if conducted in accordance with certain guidelines, and the situation described in question 1 is not.
I am aware of no Wisconsin statute pertinent to the situations you describe. The practices are therefore lawful unless they violate a provision of either the state or federal constitution. Those provisions applicable to your inquiry are as follows:
 United States Constitution, first amendment [made applicable to the States by the fourteenth amendment]:
 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .
Wisconsin Constitution article I, section 18:
 The right of every man to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be *Page 82 
drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.
The Wisconsin Supreme Court has remarked that the language of article I, section 18 of the Wisconsin Constitution, while "more specific than the terser" clauses of the first amendment, carries the same import: Both provisions "`are intended and operate to serve the same dual purpose of prohibiting the "establishment" of religion and protecting the "free exercise" of religion. . . .'"State ex rel. Holt v. Thompson, 66 Wis.2d 659, 676,225 N.W.2d 678 (1975), quoting State ex rel. Warren v. Nusbaum,55 Wis.2d 316, 332, 198 N.W.2d 650 (1972). Because the questions you raise do not concern the expenditure of public funds "for the benefit of religious societies, or religious or theological seminaries, " analysis under the first amendment is the same as analysis under article 1, section 18. See generally 68 Op. Att'y Gen. 287, 294 (1979).
The first amendment requires the state to be neutral in its relations with groups of religious believers and non-believers alike. School District of Abington Tp., Pa. v. Schempp, 374 U.S. 203,216 (1963). Thus, the government is proscribed not only from favoring specific denominations, but also from promoting all religion:
 Just as the right to speak and the right to refrain from speaking are complementary components of a broader concept of individual freedom of mind, so also the individual's freedom to choose his own creed is the counterpart of his right to refrain from accepting the creed established by the majority. At one time it was thought that this right merely proscribed the preference of one Christian sect over another, but would not require equal respect for the conscience of the infidel, the atheist, or the adherent of a non-Christian faith such as Mohammedism or Judaism. But when the underlying principle has been examined in the crucible of litigation, the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all.
Wallace v. Jaffree, 105 S.Ct. 2479, 2488 (1985).
The constitutionality of a practice challenged under the establishment clause must be analyzed by use of a three-part test. To survive constitutional scrutiny, the practice must have a secular purpose; its principal effect must be one that neither advances nor *Page 83 
inhibits religion; and the practice must not foster an excessive government entanglement with religion. Lemon v. Kurtzman,403 U.S. 602, 612-13 (1971). If the practice under challenge violates any one of these three principles, it must be struck down under the establishment clause. Stone v. Graham, 449 U.S. 39, 40-41
(1980).
A review of pertinent establishment clause cases in the federal courts reveals that they have arisen in a context somewhat different from that presented in your request. In particular, most controversies have involved prayer or meditation in a classroom setting, and most have further involved pre-college rather than college-age students. These distinctions, however, are not pertinent as a threshold consideration. Instead, they are considered where appropriate under the Lemon test. See, e.g., Doev. Aldine Independent School Dist., 563 F. Supp. 883 (S.D. Tex. 1982); Widmar v. Vincent, 454 U.S. 263 (1981).
I.
 CONSTITUTIONALITY OF A VOLUNTARY PRE-GAME PRAYER LED BY A MEMBER OF THE COACHING STAFF
It is by now well established that any type of prayer sessions endorsed or even permitted by policy or practice in public elementary and secondary schools violates the establishment clause. This point of law has been rigorously applied by the courts, as is illustrated by the following cases. A public school may not require that a prayer composed by the Board of Regents be recited aloud in class, even if the prayer is non-denominational and individual students may remain silent or leave the room.Engel v. Vitale, 370 U.S. 421 (1962). A public school also may not provide for voluntary Bible reading and recitation of the Lord's Prayer. Abington, 374 U.S. at 205. A public school may not schedule a voluntary session before school begins for students to read "remarks" of the chaplain from the Congressional Record, followed by comments and meditation. State Bd of Education v.Board of Ed. of Netcong, 108 N.J.Super. 564, 262 A.2d 21, aff'dper curiam, 57 N.J. 172, 270 A.2d 412 (1970), cert. denied,401 U.S. 1013 (1971). In addition, a school may not permit students to pray at the opening of assembly programs, even if the programs are run by the student council and attendance is not mandatory.Collins v. Chandler Unified School Dist., 644 F.2d 759 (9th Cir.),cert. denied, 454 U.S. 863 (1981). Finally and most recently, a public school may not set aside a daily *Page 84 
period of silence "for meditation or voluntary prayer." Wallace,105 S.Ct. 2479.
In each of these cases, the court concluded that the challenged activity failed under at least one of the three parts of theLemon test and, therefore, constituted an establishment clause violation. I reach the same conclusion with regard to the activity described in your first question.
The "purpose" part of the establishment clause test unquestionably forbids practices which have a "pre-eminent purpose" that is religious in nature. See Stone, 449 U.S. at 41. Although your inquiry does not discuss the purpose of the staff-led prayer described in your first question, the circumstances under which it is undertaken strongly suggest that the prayer is offered for traditional religious reasons. Prayer most commonly refers to the inherently religious exercise of invoking the deity for purposes of praise, thankfulness or assistance. See Karen B.v. Treen, 653 F.2d 897, 901 (5th Cir. 1981), aff'd, 455 U.S. 913
(1982); Kent v. Commissioner of Ed., 380 Mass. 235,402 N.E.2d 1340 (1980). If this is a pre-eminent reason for offering the prayer, the activity you describe clearly has an impermissible religious purpose.
Even assuming for the moment that the claimed purpose of the pre-game prayer is instilling in the players a sense of team spirit or unity, my conclusion remains the same. This is consistent with the outcome in a recent case involving similar circumstances, entitled Doe v. Aldine Independent School Dist.,563 F. Supp. 883. In that case, an establishment clause challenge was brought against a local high school practice of reciting and singing a school prayer at pep rallies and athletic events. The prayer, often sung by students to music played by the school band, consisted of the following words: "Dear God, please bless our school and all it stands for. Help keep us free from sin, honest and true, courage and faith [sic] to make our school the victor. In Jesus' name we pray, Amen." The athletic events took place at the football stadium, and the singing was frequently initiated by the high school principal or other school employes, although student attendance and participation was voluntary.
Applying the three-part Lemon test, the Court addressed the claim made by the school that the prayer had the secular purpose of instilling in the students "`a sense of school spirit or pride . . . *Page 85 
[which] has a beneficial effect on the student body and contributes to an increase in morale, and concomitantly lessens disciplinary problems.'" Aldine, 563 F. Supp. at 886. The claim was rejected:
 This argument misconstrues the law on this point. A school district or other governmental body cannot seek to advance nonreligious goals and values, no matter how laudatory, through religious means. Abington School District v. Schempp, 374 U.S. 203 . . . . Additionally, when a nonreligious purpose may be promoted through nonreligious means, a state may not employ religious ones. Abington School District v. Schempp, 374 U.S. at 278, 83 S.Ct. at 1601 (Brennan, J., concurring); Lubbock Civil Liberties Union v. Lubbock Independent School District, 669 F.2d at 1045.
Aldine, 563 F. Supp. at 886. Presumably, the goals and values of team spirit or unity can likewise be encouraged through nonreligious means.
Constitutional conflict is not prevented by the fact that participation in the pre-game prayer is voluntary, by the fact that the activity takes place in the locker room rather than the classroom, or by the fact that the players are college rather than pre-college students. Voluntariness is not relevant to an inquiry under the establishment clause. Engel, 370 U.S. at 430. Further, the prayer is conducted at a university facility, is conducted during a university sponsored event and, most importantly, is conducted at the initiation of university staff members. As long as the activity takes place on university property and is undertaken with obvious university endorsement, the particular geographic location is of no legal significance. Finally, the distinction between pre-college and college age students is pertinent only in considering the second and third parts of the establishment clause test. See, e.g., Widmar,454 U.S. 263 (invalidating university regulation prohibiting use of school buildings for religious exercises) and Brandon v. Board ofEd. of Guilderland Cent. Sch., 635 F.2d 971 (2d Cir.), 1980 cert.denied, 454 U.S. 1123 (1981) (upholding high school's refusal to allow group of students to assemble for prayer). Under the first part of the test, the inquiry is directed at the motivation of those who initiate the practice rather than at those who participate in or witness the practice.
Having concluded that the situation presented in your first question fails under the first part of the Lemon test and thus constitutes *Page 86 
an establishment clause violation, I am further of the opinion that cessation of this activity would not be an improper interference with the right of players and coaching staff to the free exercise of religion. The free exercise right of players and staff is not infringed by enforcement of the establishment clause, just as enforcement of their right under the free exercise clause would not violate the establishment clause. The two clauses are not mutually antagonistic. See Aldine,563 F. Supp. at 888.
II.
 CONSTITUTIONALITY OF A FEW MOMENTS OF SILENT MEDITATION IN WHICH THE PLAYERS AND COACHES PARTICIPATE
The constitutionality of a "silent meditation" measure which makes no reference to prayer has not been conclusively established, although it has been the subject of considerable debate. The relatively few federal courts which have considered the issue have divided on the constitutionality of the practice. The majority, however, have held silent meditation to be unconstitutional. Compare Gaines v. Anderson, 421 F. Supp. 337
(D. Mass. 1976) (upholding moment of silence statute) with May v.Cooperman, 780 F.2d 240 (3d Cir. 1985) (striking down statute);Duffy v. Las Cruces Pub. Schools, 557 F. Supp. 1013 (D. N.M. 1983) (same); and Beck v. McElrath, 548 F. Supp. 1161 (M.D. Tenn. 1982) (same). See also Walter v. West Virginia Bd. of Educ.,610 F. Supp. 1169 (S.D. W. Va. 1985) (striking down state constitutional amendment).
Although the full Supreme Court has not yet considered the issue, dictum in two decisions — one very recent — suggests that the "moment of silence" practice, if properly implemented, may be upheld. See Abington, 374 U.S. at 281 (Stevens, J.), and Wallace,105 S.Ct. at 2491 (Stevens, J.), 2493 (Powell, J., concurring) and 2497-2501 (O'Connor, J., concurring). In the latter case, the Court considered an establishment clause challenge to an Alabama statute authorizing a period of silence in public schools "for meditation or voluntary prayer." After examining the legislative history, the Court determined that the state's purpose in passing the statute was to endorse religion, and the statute was therefore struck down under the first part of the Lemon test. SeeWallace, 105 S.Ct. at 2490. *Page 87 
However, the majority opinion suggests in passing that a simple moment for "silent meditation" may be constitutional if the state does not endorse prayer as the preferred activity for that time.See Wallace, 105 S.Ct. at 2491-92 (Stevens, J.) and 2493 (Powell, J., concurring). The two concurring opinions indicate even more directly that a straightforward "moment of silence" measure may be upheld. See Wallace, 105 S.Ct. at 2493 (Powell, J., concurring) and 2496, 2497-2501 (O'Connor, J., concurring).
 A state sponsored moment of silence in the public schools is different from state sponsored vocal prayer or Bible reading. First, a moment of silence is not inherently religious. Silence, unlike prayer or Bible reading, need not be associated with a religious exercise. Second, a pupil who participates in a moment of silence need not compromise his or her beliefs. During a moment of silence, a student who objects to prayer is left to his or her own thoughts, and is not compelled to listen to the prayers or thoughts of others. For these simple reasons, a moment of silence statute does not stand or fall under the Establishment Clause according to how the Court regards vocal prayer or Bible reading. Scholars and at least one member of this Court have recognized the distinction and suggested that a moment of silence in public schools would be constitutional.
Wallace, 105 S.Ct. at 2498-99 (O'Connor, J., concurring).
The Wallace dictum provides no guarantee of the outcome of any future cases concerning pure "silent meditation" measures. In my opinion, however, the practice described in your second question is more likely to survive a constitutional challenge than the practice described in your first question, provided that the measure is carefully implemented so as to carry no religious purpose or preference.
III.
 CONSTITUTIONALITY OF A PRE-GAME PRAYER ORGANIZED BY THE PLAYERS WITHOUT THE INVOLVEMENT OF THE COACHING STAFF
Your third question implies absolutely no involvement by the university or university personnel beyond simply allowing a practice to occur on university property. It is my opinion that this situation would not constitute an establishment clause violation, provided that the university and staff maintain absolute neutrality *Page 88 
with regard to the content of the prayer or whether the prayer occurs at all.
Clearly, the same opportunity would have to be provided to players who choose to engage in non-Christian as well as Christian prayer, meditation, reflection or religious exercise, as well as to players who choose to engage in nonreligious speech during the same period of time. Once the activity is allowed, the only permissible university involvement is that of establishing reasonable regulations of time, place and manner. See Widmar,454 U.S. at 276.
The obvious danger inherent in the activity you describe is that, although ostensibly organized by players, it may in practice be conducted with some degree of participation, supervision or encouragement on the part of the staff. As was discussed in response to your first question, any degree of staff involvement, no matter how slight, could easily be perceived as an endorsement of prayer or even of a particular type of prayer and thus render the practice unconstitutional. See Aldine,563 F. Supp. at 886.
BCL:BLB *Page 89